GEORGE FINCH AND DOAK FINCH, EXECUTORS OF BROWN FINCH, v.
NORTH CAROLINA RAILROAD COMPANY.

(Filed 22 February, 1928.)

**1. Negligence—Question for Jury—Railroads—Proximate Cause.**

In an action to recover damages from a railroad company for the negligent killing of plaintiff's testate at a grade crossing of the railroad with a much used street of a city, when there was evidence tending to show that defendant's long freight train had blocked the street and had been broken to clear the street for traffic, and that the testate, probably regarding this as an invitation, immediately went upon the tracks, when his view was obstructed by the cars of the freight train on either side, without looking or listening, and was struck by defendant's passenger train on a parallel track, coming without signal or warning; with further evidence that other employees of the defendant on the freight train could have perceived his danger and have warned him in time: *Held,* the question of negligence and contributory negligence was for the jury under

instructions as to whether the defendant's negligence was the proximate cause of the injury, or the testate's negligence proximately contributed thereto, under the rule of the prudent man.

**2. Same—"Invitation to Cross."**

Where there is evidence tending to show that the plaintiff's testate failed to look and listen for trains before attempting to drive across the tracks of defendant railroad company, at a much used gradé crossing with a city street, and was struck by defendant's train, under circumstances tending to show defendant's negligence, and its invitation for the testate to cross that would have excused his own negligence, the question is one for the jury under proper instructions from the court.

**3. Pleadings—Proof and Variance—Error—Reversible Error.**

In an action against a railroad company to recover damages for the negligent killing of plaintiff's testate, while he was ·attempting to drive across its tracks in an automobile at a grade crossing with a frequented street of a city, there was evidence tending to show that the testate failed to look and listen for an approaching train that caused the accident resulting in death, with allegation in the complaint of specific facts that would excuse his not having done so: *Held,* the admission of vague evidence, and instruction thereon of a specific and additional fact not alleged in the complaint, bearing upon the issue of contributory negligence in the plaintiff's favor, is a variance between allegations and proof that constitutes reversible error.

**4. Motions to Nonsuit—Evidence Considered in Light Most Favorable to Plaintiff.**

Upon a motion as of nonsuit the evidence is to be taken in the light most favorable to the plaintiff, giving him the benefit of every reasonable intendment and inference to be drawn therefrom.

APPEAL by defendant from *Oglesby, J.,* and a jury, at February Term, 1927, of DAVIDSON. New trial.

This is an action brought by plaintiffs, executors of Brown Finch, against the North Carolina Railroad Company. The summons was served on defendant corporation 20 November, 1925. The complaint alleges that Brown Finch died in Davidson County, N. C., on 28 March, 1925. That he left a will naming plaintiffs executors, and they have duly qualified and entered upon the discharge of their duties. That the defendant is a corporation, chartered, organized and existing under the laws of the State of North Carolina, the owner of the railroad from Goldsboro to Charlotte, N. C., which runs through Thomasville in Davidson County, N. C. It has a franchise and has a right as a common carrier to operate and run trains with locomotive engines to carry freight and passengers. It was the owner of the railroad and franchise when plaintiffs' testate was killed. That the Southern Railway Company is a corporation organized and existing under the laws of the State of Virginia and engaged in the operation of a railroad

with trains and engines over the track of the defendant company, through the city of Thomasville, by virtue of a lease from defendant.

That on 28 March, 1925, the said Brown Finch, plaintiffs' testator, was traveling along one of the main streets of the city of Thomasville in his Buick automobile about 8:25 o'clock a.m.; on the said date turned (to travel) along and over a public crossing from the street on the south side of the said railroad to the street on the north side of the said railroad, in the western part of said city in front of West End Store, which crossing is a grade crossing and a very much used street or crossing, without any gates or watchman stationed there, or other signals; that at the time the said Brown Finch approached the said crossing, there was standing across the said crossing a long freight train headed towards the north, and extending a great distance to the north and south of the said crossing, and the said Brown Finch stopped his car, when he approached the crossing and waited for the street or crossing to be cleared by the train. Other persons likewise waited the clearing of the crossing; that after waiting for quite a while an employee and one of the crew in charge of the said freight train, and as plaintiffs are informed and believe, the conductor of said freight train, came to this crossing where the said Brown Finch and others had stopped and were waiting the clearing of the crossing, cut the train in two at the crossing and signalled those in charge of the movement of the train to move up the front part, the engine being then up near the station in the city of Thomasville, and a very great distance from the crossing, and the train was moved so as to clear the crossing, said freight train being all the time on the south track of the said railroad; that as soon as the crossing was cleared, and while the employee and member of the crew of said train in charge thereof, was still standing at the said crossing or near thereto, and in plain view of the said Brown Finch and others, the said Brown Finch and other persons who had waited the clearing of the track at the crossing immediately started to go across the track, and as the said Brown Finch was passing over the said crossing, and as the front of his car got onto the north track of the said railroad, a passenger train of the Southern Railway Company, lessee of the defendant as aforesaid, coming south at a great speed and without any signal or warning whatsoever, ran into the car which was driven by the said Brown Finch, with great force, knocked the car over against the box cars left standing when the train was parted as aforesaid, crushed the said car of the said Brown Finch between the passenger train and box cars, utterly demolishing the said automobile and killing the said Brown Finch. The freight train referred to was the train of the Southern Railway Company, lessee of the defendant, and in charge of its employees. That the said Southern Railway Company, lessee of the defendant, as aforesaid, on the said

FINCH *v.* R. R.

28 March, 1925, negligently and carelessly opened up the said crossing for persons to go over the same at a time when its fast train, train No. 37, was approaching said crossing, and negligently and carelessly ran the said train No. 37 through the city of Thomasville at a great and dangerous and unnecessary rate of speed, and negligently and carelessly failed to give any signals or warning of approach to the said crossing, at which crossing it had negligently and carelessly failed to have any gates, watchman or other signals of the approaching train, and at a time when the approach of train No. 37 could not be seen by persons at the crossing on the south side where the said Brown Finch was, by reason of the fact of the long freight train extending north therefrom to a great distance, and at a time when the employee of the said Southern Railway Company, lessee of the defendant as aforesaid, who had cut the freight train apart to make an opening for persons to cross the said railroad track, was still present, and knew of the movements of the said Brown Finch, and should have known of the approach of said train No. 37, which was going south, and notwithstanding the said crossing had been cleared and the said employee was present at the crossing, no warning or notice was given of the approach of said train No. 37, and by reason of the said negligent acts the plaintiffs' testator, Brown Finch, was killed, and his car demolished; that the said Brown Finch at the time of his death was 32 years of age, in sound health and full of vigor, mental and physical, highly educated and an experienced and capable business man, making at least $30,000 per year, and the automobile that was demolished was worth $2,000. Wherefore, plaintiffs demand judgment against the defendant for the sums of (1) $250,000 damages for the wrongful death of their testator; (2) $2,000 for the destruction of the automobile.

The defendant denies the material allegations of the complaint, and for a further answer to the plaintiffs' complaint says:

"That on 28 March, 1925, the Southern Railway Company, as lessee of the North Carolina Railroad, was operating a freight train between the towns of Spencer and Greensboro, North Carolina; that when said freight train reached the town of Thomasville, North Carolina, it stopped for the purpose of making repairs to the engine before moving north; said train was on the northbound track at the time of the accident complained of; that after standing for about ten minutes working on the engine, the defendant's conductor cut the train so as to make an opening at the street crossing. In the meantime, the plaintiffs' testator drove up on the street and stopped his car within a few feet of the freight train, and that as soon as said freight train was parted, and before the wheels of said train had stopped moving, and before the street was cleared, the plaintiff's testator negligently and carelessly

13—195

dashed between the cars over the main line of the defendant's railroad, where he was stricken by defendant's southbound train; that both plaintiffs' testator and defendant's conductor were standing near the crossing on the same side of the freight-train and plaintiffs' testator dashed in between the cars just as soon as the space was wide enough for his automobile to get through, without looking or listening, and before the defendant's conductor could give any signal whatsoever to him; that had the plaintiffs' testator remained stationary in his car until defendant's conductor could move his train, the accident would not have happened, but plaintiff's testator carelessly and negligently and recklessly, without either looking or listening for the approach of a train or waiting for a signal from the conductor, rushed his automobile between the cars on to the track before defendant's conductor had any chance whatsoever to give him warning, and the injuries sustained by the plaintiff's testator were due to his own contributory negligence; that said conductor, as well as other persons, tried to stop plaintiff's testator by signal and by calling to him, but that testator without paying any regard to his safety, carelessly and negligently rushed through the opening without paying any attention whatsoever to warnings and without looking and listening for the approach of a train, rushed on to the main line immediately in front of a southbound train, and was fatally injured; and the defendant avers that plaintiffs' testator contributed to his own fatal injury as hereinabove set out."

The facts tended to show: "That on 28 March, 1925, defendant's lessee stopped one of its northbound freight trains at Thomasville, N. C., for the purpose of making repairs to the engine before going further north; that the said freight train was on the northbound track at the time plaintiffs' testate was killed; that, after standing about fifteen (15) minutes, the defendant's conductor cut the train so as to make an opening at the street crossing; that defendant's railroad tracks run through Thomasville, N. C., north and south; that West End Store is in the western section of Thomasville, about sixty or sixty-five feet from the railroad crossing; that there is a street crossing the railroad connecting North and South Main streets near this store. There are two main streets in Thomasville, one on the north side, the other on the south side of defendant's tracks, and parallel therewith. There are connecting streets crossing defendant's tracks—three west of the station, including the West End crossing.

At the time plaintiffs' testate was killed there were no gates, watchmen or signals at West End crossing, which was about three-quarters (3/4) of a mile south of the station. The engine of defendant's freight train stopped near the station and extended probably ten cars south of the West End crossing. While defendant's freight train was blocking

the crossing, plaintiffs' testator traveled in a closed car from the north end of Thomasville parallel with defendant's railroad track and defendant's freight train aforesaid standing thereon. As he approached the crossing, which was then blocked by defendant's freight train, he drove around a truck loaded with chairs which was standing at the crossing and stopped his automobile about six or eight feet from the railroad track. Other persons were at the crossing waiting for the crossing to be cleared. Some two or three minutes after plaintiffs' testator reached said crossing and stopped, the conductor uncoupled the freight train and caused the engine to move north a sufficient distance to clear the crossing, leaving about ten cars south of the crossing, the balance of the train, which reached near the station (which was three-quarters of a mile away), being north of the crossing. The conductor followed the moving portion of the freight train across the crossing, walking slowly behind it and on the side of the track."

*Rev. O. B. Williams,* witness for plaintiffs, testified in part: "Brown Finch saluted me, and I understood from his gestures he extended to me an invitation to ride across with him. *Finch's car was entirely closed; neither of us could hear the other.* I put my hand on the fender of his car and told him I was going to get my car on the other side. Finch's car was standing still headed toward the train. In two or three minutes the trainmen came from the rear of the train, took hold of the lever and signalled to the engineer to move forward. The train would not uncouple, and he signalled again, and the train moved slowly backward and seemed to release, and he lifted the coupling and signalled again, and the train moved forward and cleared the crossing. The trainmen followed the train across the crossing, walked slowly behind the train, and on the side of the track and when the train cleared the crossing, *the trainmen gave a different signal from the one he gave when the train moves to clear the track.* Brown Finch and I moved toward the southbound track. I was moving cautiously and, as I looked when I stepped over there on the southbound track, I saw a fast train approaching at a close range, and I felt danger and said, *'Look out for the train!'* and I ran for my life. There were two explosions close together. Brown Finch was killed and his car was completely demolished." On cross-examination: "The conductor of the freight train signalled the engineer forward and made several signals before they got the cars uncoupled. The conductor moved along with the moving train at the end of the last car and on the same side of the train that I was on. I think he walked at the end of the train and had his hand on the rear of the car until the train stopped. *I do not know the stop signal, but the conductor made a signal.* I cannot say whether it was the customary signal for stopping. The conductor was looking forward towards his engine

until the train stopped, *and he was looking in that same direction when he gave the signal.* . . . About the moment the freight cars stopped rolling, or immediately thereafter, we started across the tracks. The opening was wide enough for two cars to pass. I had one foot on the southbound track when I looked to the right and saw that train No. 37 was coming. . . . I only had a momentary vision of the train and turned my back and got away as quickly as possible."

*Thomas Kennedy,* witness for plaintiffs, testified in part: "Trainmen then flagged the engineer of the freight train and the engineer loosened the train and pulled a part of it across the crossing. The last time I saw the conductor he was standing there doing this (here witness indicates a signal). I took it that we could go across. I began to start my truck, and Brown Finch was three or four feet ahead of me when I started. I could not move as fast as Brown Finch could, and I stopped, thinking he was going to cut across in front of me. I moved along slowly across the crossing, and I saw a train within ten feet of us. This train struck Brown Finch's car, demolishing it and killing him." On cross-examination he testified: "When I first saw the trainman or conductor he was walking up by the side of his train about ten or twelve feet from the crossing and on our side of the train. He was walking toward the engine. He reached in between the cars and put his hand on the lever. I saw him give a signal to the engineer to slack up. As soon as the train was slack, the conductor cut it in two. I did not see the conductor give the signal to pull forward, but I did see him give a signal after the cars started moving. *This is the signal to which I* referred in my direct examination. *When this conductor was giving this signal he was looking right up the train towards the engineer.* I do not know what this signal was, whether it was to stop or not, but I recall that I have seen exactly the same signal given in the switch yard when cars were shifting."

Plaintiffs' evidence further tended to show that plaintiffs' testator was killed by a fast passenger train of defendant's lessee approaching from the north on a track parallel with the track on which the freight train was passing and within four or five feet of it; that said passenger train was running rapidly, possibly sixty miles an hour; that it gave no signal whatever of its approach; that the vision of the plaintiffs' testator was obstructed by the freight train; that said passenger train was rapidly approaching said crossing without giving any signal or warning; that those who were waiting at the crossing to pass at the same time plaintiffs' testator was waiting did not hear the approach of the passenger train until it came to the crossing—heard no signal. The freight train obstructed the view of the approaching train.

The evidence tended to show that West End crossing was a much used crossing; that it was within the corporate limits of the town of Thomasville; that from 500 to 1,000 people passed over it daily; that the population of Thomasville in 1925 was about 7,500 people.

The issues submitted to the jury and their answers thereto were as follows:

"1. Was the death of plaintiffs' testate, Brown Finch, caused by the negligence of the Southern Railway Company, lessee of the North Carolina Railroad Company, as alleged in the complaint? Answer: Yes.

"2. Did the said Brown Finch by his own negligence contribute to his death, as alleged in the answer? Answer: No.

"3. What amount of damages, if any, are the plaintiffs entitled to recover for the death of Brown Finch? Answer: $140,000.

"4. What amount of damages, if any, are the plaintiffs entitled to recover for the destruction of the automobile, as alleged in the complaint? Answer: $1,500."

The other necessary facts and material assignments of error will be set forth in the opinion.

*Raper & Raper, Phillips & Bower, McCrary & DeLapp, and King, Sapp & King for plaintiffs.*

*Linn & Linn, Sidney S. Alderman, Walser & Walser, Z. I. Walser, W. F. Brinkley and P. V. Critcher for defendant.*

CLARKSON, J. The defendant introduced no evidence, and at the close of plaintiff's evidence made a motion for judgment as in case of nonsuit (C. S., 567), which motion the court below overruled. In this we think there was no error. On motion for nonsuit the evidence is to be taken in the light most favorable to plaintiff, and he is entitled to the benefit of every reasonable intendment upon the evidence and every reasonable inference to be drawn therefrom.

The court below charged the jury clearly and accurately the law in regard to the burden of proof, negligence, proximate cause and contributory negligence.

The court charged: "That both the railroad in approaching a public crossing and the traveler on the highway, are charged with mutual duty of keeping a careful lookout for danger, and the degree of diligence to be used on either side is such as a prudent man would exercise under the circumstances of the case in endeavoring to perform his duty. Our Supreme Court has laid down certain other rules of conduct of travelers in approaching railroad crossings, which rules the Court gives you for your guidance in determining and passing upon this action. A traveler on the highway, before crossing a railroad track, as a general rule, is

required to look and listen, and to ascertain whether a train is approaching; and the mere omission of the trainman to give the ordinary or statutory signals will not relieve him of this duty. Where the view is unobstructed, a traveler who attempts to cross a railroad track under ordinary and usual conditions without first looking, when by doing so he could note the approach of a train in time to save himself by reasonable effort, is guilty of contributory negligence. Where the view is obstructed a traveler may ordinarily rely upon his sense of hearing, and if he does listen and is induced to enter on a public crossing, because of the negligent failure of the company to give the ordinary signals, this will usually be attributed to the failure of the company to warn the traveler of the danger, and not imputed to him for contributory negligence. There may be certain qualifying facts and conditions which so complicated the question of contributory negligence that it becomes one for the jury, even though there has been a failure to look or listen, and a traveler may, in exceptional instances, be relieved of these duties altogether, as when gates are open or signals given by a watchman and the traveler enters on the crossing reasonably relying upon the assurance of safety. The court further instructs that it is the duty of the employees of a railroad company to give reasonable and timely notice of the approach of trains to a public crossing by ringing the bell or blowing the whistle of the locomotive when the circumstances demand it. The court further instructs you that in considering the degree of care exercised by defendant, you may consider the speed of the train, the acts of the employees, the nature of the crossing, whether or not there were gates or automatic bells there with other circumstances in the case. The court charges you that it was lawful and proper for the conductor to separate his train so as to cease blocking the crossing, and the mere fact that he separated the train would not constitute negligence; as to whether it would constitute an invitation for deceased to go upon the crossing is a matter for the jury to decide; it is a matter for you to consider in passing upon the acts of the defendant, and in determining whether or not defendant was negligent. If you find by the greater weight of the testimony that the defendant failed to keep a proper lookout, and failed to exercise a degree of diligence under the circumstances as you find them in this case, such as a prudent man would have exercised, and such failure was the proximate cause of the injury, you will answer the first issue Yes."

This charge embodies the correct principles of law and is fully borne out by decisions of this State. *Johnson v. R. R.,* 163 N. C., 431; *Brown v. R. R.,* 171 N. C., 266; *Goff v. R. R.,* 179 N. C., 216; *Dudley v. R. R.,* 180 N. C., 34; *Perry v. R. R.; ibid.,* p. 290; *Blum v. R. R.,* 187 N. C., 640; *Rigsbee v. R. R.,* 190 N. C., 231; *Barber v. R. R.,* 193 N. C., 691.

FINCH, *v.* R. R.

A portion of the above charge contended by defendant not pertinent to the facts in the present action will be hereafter considered.

In *Harrison v. R. R.,* 194 N. C., p. 656, the facts were different from the present action.

On the question of contributory negligence the court below instructed the jury as follows: "The court, gentlemen, instructs you that it is a rule of law that a person who voluntarily goes on a railroad track at a point where there is an unobstructed view of the track, and fails to look or listen for danger, cannot recover for an injury which may have been avoided by looking and listening; but where the view is obstructed or other facts exist which tend to complicate the question of contributory negligence, it becomes one for the jury. These circumstances may involve obstructions on the tracks, several tracks and trains running on them in different directions, and one train is obscured by another. When these facts exist, gentlemen, the issue of contributory negligence is for you to determine under the instructions given you by the court and the facts as you find them. The court further instructs you, gentlemen, that if you should find that the trainmen's act in cutting the train in two parts, and opening the crossing, would be an implied invitation for deceased to cross, and that deceased, being familiar with the crossing, he might act within reasonable limits on the presumption that it is safe for him to go on the crossing. The extent to which a traveler may rely on such circumstances is a question of fact, and while ordinarily the same degree of care and vigilance is not required of a traveler, under such circumstances, as otherwise, he has no right to rely exclusively upon such circumstances, nor will such presumption or assurance excuse the traveler from using every reasonable precaution that an ordinarily prudent man would use under like circumstances." The charge embodies correct principles of law. *Barber v. R. R., supra,* and cases cited.

The serious assignment of error is the refusal of the court below to give the following special instruction, which the defendant prayed the court to give: "I charge you that you cannot consider any contention that the conductor of the freight train was negligent in *giving a hand signal to plaintiffs' testator, signalling him to come upon the crossing at which he was killed,* because no such negligence is alleged and charged in the complaint. You will, therefore, disregard any such contention in passing upon the first issue." The defendant contends that "the defendant was absolutely entitled to have this special instruction, to eliminate from the case a contention as to negligence not supported by the complaint. It will be observed that the complaint specifies four distinct elements of alleged negligence: (1) Opening up the crossing at a time when the fast train was approaching; (2) ran No. 37 (Crescent Limited) through the town at a great and dangerous and unnecessary

speed; (3) failed to give any signals or warning of its approach to the crossing; (4) failed to have any gates, watchman or other signals at the crossing; but contains no allegation that the freight conductor was careless or negligent in giving an express affirmative signal to plaintiffs' testator. . . . Accordingly it appears beyond dispute that this second signal was given by the conductor looking straight down the train toward the engine and was plainly and manifestly a signal to the engine crew of the freight train, and was the signal which stopped the movement of the forward part of the freight train. Even if it had been alleged that an express hand signal was negligently given by this conductor to Brown Finch and the others, this proof would not have sustained the allegation. Certainly in the absence of the allegation the court should have expressly eliminated the theory of a negligent express hand signal as an invitation." We think this prayer should have been given. It is termed in defendant's brief *express invitation by hand signal.* If there was evidence of an express invitation by hand signal, under the facts and circumstances of this case, the plaintiffs' testator could have, perhaps, relied on the express invitation. This express invitation by hand signal was not alleged in the complaint. No amendment to the pleading was requested by plaintiffs.

The Superior Court or this Court, in its discretion, had a right to allow the amendment. *Deligny v. Furniture Co.,* 170 N. C., 189. The *Deligny case* is cited by plaintiffs, but the Court in that case said (at p. 198) : "The predominant idea of the present code system is to try the cases on their real merits. It is broad in its scope and amply sufficient, as it now is, to administer justice, in every possible case, without regard to form or technical accuracy, and is sufficient, as it is at present, and even without any amendment, to satisfy the most advanced notions of modern pleadings and procedure. *But we think that the judge has, by the instruction we have quoted, neutralized, if not entirely cut out, all of the defendant's objections which are based upon its supposed duty to use the metal cleat,* and the case need only be further considered upon *the other exceptions."* (Italics ours.)

In the *Deligny case,* conceding that no amendment was necessary, or it is in the discretion of the court to grant or refuse an amendment, it will be noted that the charge of the court neutralized and cut out the objections. In this action the charge was refused, although the evidence in regard to the hand signal was vague, uncertain and ambiguous, as will hereafter be noted.

How about the facts bearing on the express invitation by hand signal? The court in its charge, reciting plaintiffs' contention, said: "The plaintiffs say that on the morning of 28 March, 1925, there was a freight train across the West End crossing of the Southern Railway in Thomas-

FINCH *v.* R. R.

ville; that the train was across the crossing about fifteen minutes, and that there were no gates or watchman at the crossing; that while the freight train was standing across the crossing Brown Finch, the deceased, drove up in a Buick sedan and stopped, waiting at the crossing with others for a few minutes; that he drove up alongside a truck loaded with chairs, and that he stopped his car about eight feet from the track; that a member of the train crew uncoupled the cars and cut the train in two; that part of the train passed across the crossing, trainmen following it; *that trainman signalled; that signal understood to mean to cross;* that deceased, Williams and Kennedy started to cross, and that car driven by deceased was struck, knocked against the side of the freight train, demolished and deceased was killed." In the charge heretofore quoted, the court below said: "There may be certain qualifying facts and conditions which so complicated the question of contributory negligence that it becomes one for the jury, *even though there has been a failure to look or listen, and a traveler may, in exceptional instances, be relieved of these duties altogether, as when gates are open or signals given by a watchman and the traveler enters on the crossing* reasonably relying on the assurance of safety." Although a correct principle of law, was it pertinent to the facts in this action? The exceptional instances, "signals given by a watchman." It is undisputed on the record that the street crossing had no gates or watchman. The signal in the charge which the court mentioned which would relieve plaintiffs' testator of the duty altogether to look or listen if a signal at all was given, it was contended by plaintiffs to have been given by the trainman (conductor).

This attitude of the charge practically left it to the jury to say that if the trainman (conductor) signalled, that signal was understood to mean to cross, and plaintiffs' testate reasonably relying upon the assurance of safety need not look or listen. In other words, the signal relied on by plaintiffs' testate was negligence and the contributory negligence issue was immaterial. When the court charged on the attitude of the trainman's (conductor) act *in cutting the train in two parts,* it charged: "The extent to which a traveler may rely on such circumstances is a question of fact, and while ordinarily the same degree of care and vigilance is not required of a traveler, under such circumstances, as otherwise, he has no right to rely exclusively upon such circumstances, nor will such presumption or assurance excuse the traveler from using every reasonable precaution that an ordinarily prudent man would use under like circumstances." This is a correct statement under the *Barber case, supra.*

But what is the evidence *"that trainman signalled, that signal was understood to mean to cross."* Plaintiffs' witness, Williams, testified:

*"Finch's car was entirely closed, neither of us could hear the other. . . .* The trainman followed the train across the crossing, walked slowly behind the train, and on the side of the track, and when the train cleared the crossing the trainman gave a different signal from the one he gave when the train moved to clear the track. . . . (On cross-examination) : The conductor of the freight train signalled the engineer forward and made several signals before they got the cars uncoupled. The conductor moved along with the moving train at the end of the last car and on the same side of the train that I was on. I think he walked at the end of the train and had his hand on the rear of the car until the train stopped. I do not know the stop signal, but the conductor made a signal. I cannot say whether or not it was the customary signal for stopping. *The conductor was looking forward towards the engine until the train stopped, and he was looking in that same direction when he gave the signals."*

The witness, Kennedy, testified : "The trainman then flagged the engineer of the freight train, and the engineer loosened the train and pulled a part of it across the crossing. The last time I saw the conductor he was standing there doing this (here witness indicates a signal). I took it that we could go across. . . . I did not see the conductor give the engineer the signal to pull forward, but I did see him give a signal after the cars started moving. *This is the signal to which I referred in my direct examination. When this conductor was giving this signal he was looking right up the train towards the engineer. I do not know what this signal was, whether it was a stop signal or not, but I recall that I have seen exactly the same signal given in the switch yard when cars were shifting."*

The evidence in relation to the trainman's (conductor) signal, was to say the least vague, uncertain and ambiguous. Then again, did plaintiffs' testate see the signal and rely on it? The evidence *was that his car was entirely closed.* There was no allegation in the complaint that plaintiffs' testate relied on an express invitation by hand signal for plaintiffs' testate to cross. The evidence tends strongly to show that the signal was given to the engineer and not to plaintiffs' testate; at any rate the evidence of such a signal was vague, uncertain and ambiguous, and there is no evidence that plaintiffs' testate saw it or was misled by it,

There are other exceptions on the record not necessary to be considered. From a careful review of the whole record we think the prayer for instruction should have been given and the refusal, under the facts and circumstances of this case, prejudicial and reversible error. For the reasons given there must be a

New trial.