MRS. ROSA H. NASH, ADMINISTRATRIX OF LOUISE NASH, v. SEABOARD AIR LINE RAILWAY COMPANY AND SAM HOWIE.

(Filed 8 January, 1932.)

1. **Highways B k—Where guest has no control over driver and is not engaged in joint enterprise, negligence of driver will not be imputed to him.**

   Where a gratuitous passenger or guest in an automobile has no ownership or control over the car and is not engaged in a joint enterprise with the driver or other occupants, negligence of the driver of the car will not be imputed to the guest, and he may recover against a third person for a negligent injury if the negligence of the driver is not the sole proximate cause of the injury.

2. **Negligence C a—Person will not be held to same degree of care for own safety where placed in imminent peril.**

   The driver of an automobile, in an effort to avoid an accident at a railroad crossing, turned the car and drove it down the tracks in front of an approaching train, and a guest in the car jumped therefrom and was killed by being hit by the engine: *Held*, the act of the guest in jumping from the car under the circumstances will not bar the right of her administrator to recover damages against the railroad company for its negligence which proximately caused the injury, although the driver and other passengers in the car who remained therein escaped injury.

3. **Railroads D b—Evidence of negligence of railroad company proximately causing injury in collision at crossing held sufficient.**

   The plaintiff's intestate was killed in an accident at a grade crossing of a railroad company while the intestate was riding as a guest in an automobile owned and operated by another. In an action by her administratrix against the railroad company the evidence tended to show that the intestate had no control over the driver of the car, and was not engaged in a joint enterprise at the time of the accident, that no signal was given by the approaching train, that the view at the crossing was partially obstructed by a loading platform and trees upon the right-of-way, and by other cars parked near the tracks, that the crossing was in an incorporated town and was much used, that the accident occurred at five o'clock in the afternoon when traffic was heaviest, and that the railroad company kept no watchman or signaling device at the crossing, *Held*: the evidence was sufficient to be submitted to the jury, and the defendant's motion as of nonsuit was properly denied.

CIVIL ACTION, before *Finley, J.*, at July Term, 1931, of RICHMOND.

Raleigh Street, in the town of Hamlet, runs approximately north and south. Seven tracks of the defendant cross the street at grade. This street, including the railroad crossing, is paved with concrete and divides the town into two parts. Business houses and residences are situated on both the north and south sides of said crossing. The crossing is constantly used by pedestrians and vehicles at all hours of the day, and

particularly in the afternoon. The depot of defendant is near the cross-
ing and the tracks are in constant use by passenger trains, freight trains
and shifting engines. On the west side of the crossing and about 91
feet therefrom is situated a building known as the Ford plant. There
is also on the west side and near the crossing a loading platform for
freight, the height of which was variously estimated from five to seven
feet. There are two large trees on the right of way of defendant. The
nearest tree is 150 or 160 feet from the crossing and the next tree
thereto about 200 feet from the crossing. There is an iron-clad building
referred to as a warehouse or factory situated 300 feet west of the cross-
ing. The space between the Ford plant and the crossing is open, and
the evidence tended to show that this space was used for parking auto-
mobiles. On 27 August, 1930, Sarah Adams, a girl about sixteen years
of age, was driving her father's Pontiac sedan. On the front seat with
the driver was Miss Louise Nash. The rear seat was occupied by three
girls, Misses Sullivan, Meacham and Kirkland. It was about five o'clock
in the afternoon. The driver of the car said: "There were cars passing
all the time, going in every direction. It was five o'clock in the after-
noon. As we approached this crossing I looked and listened. I first saw
the train when I was just almost on the crossing. It was just at the edge
of the street. I don't know how far we were from the rail upon which
the train was traveling. It seems as far as from here to the bannister
over there. I did not hear any bell or any whistle. I did not see the
approach of the train. When I saw the train it was moving east. I was
on the right side of the street at that time. When I saw the train
Louise Nash screamed and said 'Sarah.' I saw the train as she
screamed and then started turning east. I ran down the track I don't
know how far. As I went off the track she went out of the car door. I
next saw her at my home. I did not see her on the track. The train
struck the back bumper of the car." Another girl riding in the car
at the time said: "When Louise screamed the young lady who was
driving the car turned to the left and started down the track in front
of the train. . . . Miss Adams finally got the car off of the
railroad track proper and turned it back toward Raleigh Street. I don't
know whether it was clear of the railroad track before Miss Nash got
out, I don't know when she got out. I never did see or notice to see
what damage it did to the car. The engine hit on the left side as we
turned completely off the track. The four of us that stayed in the car
were not hurt. We all got out after the car stopped." The testimony
disclosed that a long freight train was approaching the Raleigh Street
crossing from the west, traveling eastward to the depot. The engine
was a large passenger engine pulling a freight train. The height was

variously estimated from fourteen to sixteen feet and the length approximately 90 feet. The engine was driven toward the crossing and was pulling a train of forty-eight box cars, and running at a speed variously estimated at eight to fifteen miles per hour. There was also testimony to the effect that the car in which the young ladies were riding was traveling at a slow rate of speed as it approached the crossing. The evidence further tended to show that the automobile traveled down the track in front of the engine a distance of approximately 45 feet, and that just as the car turned off the track Miss Louise Nash either jumped out of the car or was thrown out immediately in front of the engine and her body cut in two by the train.

The engineer testified that he did not see the car as it approached from the opposite side of the engine. The fireman testified he saw the car approaching, but thought it had passed the front of the engine, and that he had called out to the engineer to know if the car had passed on his side. There was evidence that the engine was stopped within a space of twenty feet after the brakes were applied. Neither the engineer nor the fireman knew that Miss Nash had been killed.

There was evidence that the engine gave no signal as it approached the crossing, either by whistle or bell. There was much evidence by disinterested witnesses to the contrary. One witness testified that by reason of the obstructions aforesaid "you would have to be almost on the track before you could see. You could not see over ten feet." Another witness said: "Approaching the track on the north side you would have to be fifteen or twenty feet of the track to see a train coming there." Much evidence was offered by the plaintiff to the effect that the crossing was a populous and much used crossing, and that the defendant had maintained no watchman, gate or other signal device for the protection of the public.

At the conclusion of all the evidence the plaintiff took a nonsuit as to defendant, Howie, the engineer.

Issues of negligence, contributory negligence, last clear chance and damages were submitted to the jury. The jury answered the issue of negligence in favor of plaintiff and awarded damages in the sum of $20,000.

From judgment upon the verdict the defendant, Railway Company, appealed.

*Clyde A. Douglass, J. C. Sedberry and L. H. Gibbons for plaintiff.*
*Ozmer L. Henry, Fred W. Bynum and Varser, Lawrence & McIntyre for defendant.*

BROGDEN, J. Louise Nash was a gratuitous passenger or guest in the automobile driven by Sarah Adams. She was not the owner of the car and had no control of it; neither is there evidence that the deceased was engaged in a joint enterprise with the driver or other occupants of the car. Consequently, any negligence on the part of the driver would not be imputed to the deceased. In the light of the facts and circumstances disclosed by the present record, the rule of law, therefore, applicable to the facts was stated in *Earwood v. R. R.,* 192 N. C., 27, as follows: "Therefore, negligence on the part of the driver will not, ordinarily, be imputed to a guest or occupant of an automobile unless such guest or occupant is the owner of the car or has some kind of control of the driver. Of course, if the negligence of the driver is the sole, only, proximate cause of the injury, the injured party could not recover. This rule is not based upon the idea of contributory negligence on the part of the injured party but rather upon the idea that the party causing the injury was not guilty of any negligence, which was the proximate cause thereof." All occupants of the car who remained therein, escaped without injury, and undoubtedly the deceased would also have escaped if she had not either jumped or been thrown from the car immediately in front of the engine. This act, however, does not bar recovery. Discussing a similar situation in *Odom v. R. R.,* 193 N. C., 442, 137 S. E., 313, the Court said: "The mere fact that a person jumps from a vehicle in which he is traveling, where there is imminent danger of its coming in collision with an approaching train at a crossing, does not bar recovery against the railroad corporation, although it appears that he made a mistake and would have escaped injury had he remained quiet."

Hence the determining question of law is whether there is evidence of negligence on the part of defendant. There is evidence that no signal was given by the approaching train. There is evidence that the crossing was obstructed by a loading platform and trees upon the right of way. There is evidence that in the open space adjacent to the right of way automobiles were parked. There is evidence that the vision of an approaching traveler was thereby obscured until within ten or twenty feet of the track. Of course, the engine and box cars were higher than the parked automobiles or the loading platform near the crossing, and consequently the top of the engine and box cars was visible. Manifestly, however, there was partial obstruction or interference with vision.

The evidence of plaintiff and the inferences which such evidence warrants, classify this case in the line of decisions represented by *Moseley v. R. R.,* 197 N. C., 628, 150 S. E., 184; *Thurston v. R. R.,* 199 N. C., 496, 154 S. E., 836, and *Butner v. R. R.,* 199 N. C., 695, 155 S. E., 601. Particularly in view of the fact that the deceased was a guest in the car at the time of the collision.

2—202

There are many other exceptions in the record which have been carefully examined, but the court is of the opinion that there was sufficient evidence of negligence to be submitted to the jury and that the issue has been tried in accordance with the rules of liability heretofore established.

No error.