## STATE v. BEN ELDER.

(Filed 2 February, 1940.)

**1. Criminal Laws § 43: Constitutional Law § 14a—**

The search warrant in question was issued upon the sworn affidavit of a police officer which stated that the basis of the oath was "information." *Held:* The affidavit does not negative the assumption that the police officer was examined as to the particulars of his information and it is not required that the affidavit give in detail the source and extent of the information, and evidence procured in a search under the warrant is competent, ch. 339, sec. 1½, Public Laws of 1937.

**2. Intoxicating Liquor § 9d—Evidence held sufficient for jury on question of defendant's possession of liquor in violation of Turlington Act.**

Evidence tending to show that defendant rented an apartment which had been formerly occupied by a convicted bootlegger, which apartment was located in the business section of a city readily accessible from the street and had numerous peep-holes in the doors, that defendant purchased once or twice each week a gallon of tax-paid liquor, and that when the premises were searched the officers found a gallon of liquor and drinking glasses in the apartment and numerous empty whiskey bottles, a large number of which were dated during the period defendant had occupied the apartment, on the roof, *is held* sufficient to be submitted to the jury on the question of defendant's guilt of possession of intoxicating liquor in violation of the Turlington Act. Whether the A. B. C. Act permits a person to possess one gallon of tax-paid liquor in his residence in a dry county *held* not necessary to be determined.

**3. Criminal Law § 81c—**

The exclusion of testimony cannot be held for prejudicial error when testimony of the same import is thereafter admitted.

**4. Same—**

The exclusion of evidence cannot be held prejudicial when the record fails to show the purpose for which the testimony was offered or what the witness' answer would have been.

**5. Intoxicating Liquor § 9c—**

In this prosecution for the illegal possession of intoxicating liquor evidence that defendant had theretofore been stopped on the highway with a gallon of tax-paid liquor *is held* a competent circumstance to be considered by the jury with the other facts and circumstantial evidence in the case.

**6. Criminal Law § 77c—**

Where the charge is not in the record it will be presumed without error.

APPEAL by defendant from *Burgwyn, Special Judge,* at June Criminal Term, 1939, of MECKLENBURG. No error.

This is a criminal action in which it was charged that defendant did "buy, possess, possess for the purpose of sale, retail and transport intoxicating liquors in violation of the Turlington Act." Upon a written and

sworn affidavit of an officer, who stated therein that he acted upon "information," a warrant authorizing the search of defendant's premises for liquor was issued. Acting under the search warrant officers searched defendant's apartment, where he and friends were having a frog-leg supper. The officers found one gallon of tax-paid liquor. Drinking glasses were found in defendant's kitchen. On a roof, outside a window in a hallway leading to defendant's apartment, the officers found 102 empty bottles, most of them in a sack but from six to ten lying on the roof. Defendant's witnesses indicated that the bottles were on the roof when he moved to the apartment, but on cross-examination it appeared that the prior occupant left the apartment near the first of the year and that fifteen of the empty bottles taken from the roof bore dates ranging from February through April of that year. The State's evidence also indicated that one of the doors of defendant's apartment, as well as one of the bedroom walls, contained peep-holes covered on the inside with pieces of cardboard which could be moved back and forth, and that these peep-holes (and two others) were in the apartment during the tenancy of the prior occupant, who was convicted of selling liquor while there.

From a verdict of "guilty," and sentence pronounced thereupon, the defendant made numerous exceptions and assignments of error and appealed to the Supreme Court.

*Attorney-General McMullan and Assistant Attorneys-General Bruton and Patton for the State.*

*A. A. Tarlton for defendant.*

CLARKSON, J. The defendant, at the close of the State's evidence and at the conclusion of all the evidence, made motions in the court below for judgment of nonsuit. N. C. Code, 1935 (Michie), sec. 4643. The court below overruled these motions, and in this we can see no error.

Aside from the assignments of errors as to the refusal to grant the motions for judgment of nonsuit, the principal assignment of error deals with the admission of evidence procured under an allegedly invalid search warrant. Chapter 339, sec. 1½, Public Laws of 1937, provides that no facts discovered by virtue of a search warrant issued "without first requiring the complainant or other person to sign an affidavit under oath and examining said person or complainant in regard thereto," shall be "competent as evidence in the trial of any action." The affidavit for the warrant of search and seizure, and the warrant itself, appear in the record. It is apparent that the affidavit was sworn to by a rural policeman of Mecklenburg County before a justice of the peace. To this extent the instant affidavit is in strict compliance with the requirement

STATE *v.* ELDER.

of the statute. However, the body of the affidavit reveals that the officer gave therein as the basis for his oath merely the one word, "information." It would seem that the defendant takes the position that the failure of the officer, in his affidavit, to give in detail the source and extent of the information upon which he seeks the warrant, is in itself sufficient to render incompetent evidence secured by virtue of the warrant issued upon such affidavit. We cannot so hold.

In so far as the record speaks, the complaining officer made the required affidavit under oath; nor does it negative the presumption that the officer was further examined thereto. *S. v. Shermer,* 216 N. C., 719. The writing of the single word "information" may have been but a short-hand statement by the justice of the peace tending to indicate generally the type of evidence given to him by the officer. If defendant wished to examine into the character of the examination made by the justice of the peace and the extent of the information upon which the officer acted, he made no effort to do so, but elected to challenge the warrant upon the basis of the affidavit and warrant themselves. Looking to the legislative intent of chapter 339, sec. 1½, Public Laws of 1937, it evinces the intention to prohibit the use of "pocket" search warrants, executed in blank and left with officers to be filled in and used as their wishes, whims, or caprices might dictate; we do not find in the statute any necessary implication that, in addition to the necessary examination of the officer, the affidavit itself shall contain in detail the information and the sources of the information upon which the officer is acting. *S. v. Cradle,* 213 N. C., 217; *S. v. McGee,* 214 N. C., 184 (185). Accordingly, we hold that the evidence secured by virtue of the search warrant was competent.

Was this evidence, *in quantum,* sufficient to justify its submission to the jury? We think so. It revealed a defendant—a "big, strong and husky" man—whom two witnesses testified was never known to work. Occupying an upstairs apartment in the business section, easily accessible from the street. He went into the "lair" formerly occupied by a bootlegger who had been convicted of selling liquor in the place. The apartment was conveniently equipped with "peep-holes" to serve the purposes of illicit liquor trade. He went forth once or twice a week, over a period of months, to purchase a gallon of liquor from South Carolina liquor stores. When raided, he was found with the usual stock of liquor drinking glasses, so familiar to the bedroom-and-kitchen vendors of the prohibited fluid. With him also was a gallon of tax-paid liquor, four pints and two quarts, and conveniently near his abode, on a roof outside his hallway window, were a centurion's force of "dead soldiers"—102 empty liquor bottles. Well aware, as we are, of the evasive character of a "scintilla of evidence," we think there was more

than a scintilla of evidence here that defendant was engaged in activities prohibited by the law of this State. We think there was evidence from which the jury might find—as it did—that the comfortable lair so recently occupied by one "blind tiger" furnished an equally pleasant base for operations of another.

The other assignments of error need not be dealt with at length. Although the trial judge refused to permit an officer to be questioned as to his knowledge of the prior occupant of the apartment and his trade in liquor, defendant was not prejudiced thereby, since he was later permitted to elicit the same information from the prior occupant himself. Further, the record does not show the purpose for which this was offered nor what the witness' answer would have been. *S. v. Leak,* 156 N. C., 643 (647); *S. v. McKenzie,* 166 N. C., 290 (294). Nor do we think there was prejudicial error in permitting the State to show that defendant has been stopped on the highway with a gallon of tax-paid liquor. This was one of those "pregnant circumstances" which, while standing alone would not warrant a conviction, taken with the other facts of the case give a decided character to the cumulative effect of the circumstantial evidence. *S. v. Turner,* 171 N. C., 803; *S. v. Hege,* 194 N. C., 526. Whether the A. B. C. Act has, by necessary implication, so modified the Turlington Act as to permit residents of "dry" counties to possess in their homes not exceeding one gallon of liquor, was argued in the briefs, but the determination of this question is not necessary for the disposition of the instant case.

The facts and circumstances of the instant case were sufficient to justify the inference by the jury that defendant had such liquor in his possession in violation of the Turlington Act. *S. v. Langley,* 209 N. C., 178; *S. v. Rhodes,* 210 N. C., 473.

The charge of the court below is not in the record and the presumption is that the court below charged the law applicable to the facts.

For the reasons given, in the judgment of the court below we find

No error.