CLARKSON, J., concurring.
BARNHILL, J., dissenting.
STACY, C. J., and WINBORNE, J., concur in dissent.
This was an action to recover damages for injury to person and property alleged to have been caused by the negligence of the defendants, growing out of a collision between plaintiff's automobile and one of defendant railway company's trains, then being operated by the individual defendants as engineer and fireman respectively. The injury occurred on the night of 7 December, 1937, at a grade crossing on North Lee Street, in the city of Salisbury, North Carolina.
Plaintiff alleged failure of the defendants to give timely warning of the approach of the train by whistle or bell, and also alleged negligent omission to maintain gates, flagmen or other adequate means of warning at the crossing.
The following paragraph of the plaintiff's complaint, admitted in the answer, was offered in evidence: *Page 66 
"That the City of Salisbury is a municipal corporation of approximately 18,000 inhabitants, adjoining the town of Spencer on the north with an approximate population of 4,000 inhabitants, and that in said City of Salisbury and on the north side of the right of way of the North Carolina Railroad there are two main arterial highways leading from the City of Salisbury, northwardly through the suburbs of said city and town to the Town of Spencer, said highways or streets being known as North Main Street and North Lee Street in said city, and that both of said streets cross at street levels the line of the Southern Railway Company formerly known as the Western North Carolina Railroad, leading from Salisbury to Asheville, North Carolina; that the North Lee Street crossing, consisting of seven tracks, is not equipped with gates, electric signals, watchmen or other device or appliance to warn the traveling public of the approach of said trains at said crossing."
There was also evidence that the North Lee Street crossing was a much traveled crossing in the business section of the city, in the locality of railroad station, mills and business houses.
The plaintiff testified that in proceeding north on North Lee Street, the direction in which he was driving his automobile at the time of the injury, seven railroad tracks are crossed at street level; that parallel with North Lee Street, to the west, some 350 feet distant, is Main Street, which is also crossed at grade by defendant railway company's tracks, the general direction of the tracks being east and west.
The plaintiff described the obstructions to the view looking west from the North Lee Street crossing toward Main Street, as follows: "Between the North Lee Street crossing and the Main Street crossing, there is a coal company chute that runs out to the railroad track and oil tanks are close to the track. There is another building on down close to the railroad track which faces Main Street. I think there are about three buildings, in addition to the oil tanks between Lee Street and Main Street, which look like they are up against the railroad track. The situation in this North Lee Street crossing is now like it was at the time of my injury. Going in a northerly direction there are seven tracks which I had to cross. They are almost in half circle, beginning east of the Vance mill crossing and going west toward the Main Street crossing. At the time of my injury, there was a boxcar on the sidetrack next to the Thomas Howard building on my left. . . . On the afternoon prior to my injury, when I went over this crossing, going in a southerly direction, I observed on the left a pile of crossties between tracks 5 and 6. This was on my left going in a southerly direction. I also noticed a boxcar next to the Thomas Howard building; on down the track there were several piles of coal and a coal car. There is a coal chute runs out against the railroad and there was a coal car there. When I came back *Page 67 
that night, going in a northerly direction, I could see this boxcar was still there next to Thomas Howard. Down the track to my left I could not see as far as the Main Street crossing. I couldn't see distinctly what was down there, but it appeared like those obstacles were still there. In other words, obstacles were down there that prevented me from seeing down there. . . . Down there about where the coal car was there was a coal chute, several piles of coal and just beyond that the Texaco oil tanks and two buildings below that and Main Street."
Plaintiff testified that on the night of the injury, before entering upon the crossing at track 1, he stopped, looked both ways, and neither saw nor heard anything; that the left window of his automobile was down from the top an inch and a half. "It was a cold, cloudy, drizzly day. That night it was foggy and you couldn't see very far ahead of you from the automobile lights. . . . It was foggy, the headlights of my automobile did not throw a light over twenty-five feet. . . . To my left the track comes in almost half circle and the buildings I quoted made it impossible for me to see down to North Main Street." He testified that he proceeded carefully across tracks, 1, 2, 3, 4 and 5; that between tracks 5 and 6 there was a space of 50 feet; that halfway between these tracks he brought his car "almost to a complete stop between tracks 5 and 6." He said, "I came to practically a stop between fifth and sixth tracks. . . . The track curves and the headlight of the engine (on track 6) is thrown to the left of the track. When the train coming (comes) around that curve throwing a light the other way that car, coal piles and those buildings would obstruct your view. At a point 25 feet south of the sixth track I couldn't see a train approaching from the west more than 25 feet on that particular night because of the obstructions I have just described and the weather conditions combined."
Plaintiff testified that before starting to cross track 6 he looked in both directions and did not see or hear anything; that in traversing the short distance to track 6 he was traveling five to ten miles per hour; that he heard no whistle or bell; that he did not see the headlight or the train until it was within 8 feet of him. The front of his automobile was struck by the locomotive of the defendant railway's train coming from the west on track 6, causing injury to himself and to his automobile.
Defendant offered evidence tending to show that there were no obstructions to the view looking west to Main Street from a point 25 feet south of track 6, and that the night of 7 December, 1937, was clear and the weather cold.
Issues addressed to questions of negligence, contributory negligence and damage were submitted to the jury and answered in favor of plaintiff. From judgment predicated on the verdict, defendants appealed. *Page 68 
1. Defendant's motion for judgment of nonsuit, on the ground that plaintiff's evidence conclusively showed contributory negligence on his part, was properly denied. From a careful consideration of the evidence in the record before us, viewed in the light most favorable to the plaintiff in accord with the accepted rule on motions of this kind, we are led to the conclusion that it was a case for the jury. Meacham v. R. R., 213 N.C. 609,197 S.E. 189; Quinn v. R. R., 213 N.C. 48, 195 S.E. 85; Cole v.Koonce, 214 N.C. 188, 198 S.E. 637; Williams v. Express Lines,198 N.C. 193, 151 S.E. 197; Johnson v. R. R., 214 N.C. 484, 199 S.E. 704;Coltrain v. R. R., 216 N.C. 263.
2. The defendants assign as error the ruling of the court below in sustaining plaintiff's objection to the testimony of two witnesses as to the result of observations made by them at the Lee Street crossing nearly two years after the injury. One of these witnesses would have testified that at the time of his observation, when the weather conditions were "cloudy but not raining," the headlight of a locomotive coming from the west to the Lee Street crossing could be seen for a distance of 350 feet from a point midway between tracks 5 and 6. The other witness would have testified at the time of his observation, when the weather conditions were "kind of misty," the headlight was visible 80 to 100 feet from the same point. Ordinarily, testimony of witnesses as to observations, under circumstances like those about which testimony has been given, would be considered competent. S. v. Holland, 216 N.C. 610. But here it appears that there was a material difference in the atmospheric conditions at the time these witnesses made their observations, in 1939, from the fog which plaintiff testified obscured his vision on the night of the injury in 1937. And it further appears that other witnesses, without objection, had testified to substantially the same effect as that proposed to be offered by these witnesses. There were surveys, maps, photographs and the testimony of several witnesses as to the location and surroundings. The exception to the ruling of the trial judge in excluding the testimony of the two witnesses may not be held for error. Conrad v. Shuford, 174 N.C. 719,94 S.E. 424; Cook v. Mebane, 191 N.C. 1, 131 S.E. 407; Willis v. NewBern, 191 N.C. 507, 132 S.E. 286; Wolfe v. Smith, 215 N.C. 286,1 S.E.2d 815; Brown v. Montgomery Ward Co., 217 N.C. 368; S. v. Elder,217 N.C. 111; Wigmore on Ev. (2nd Ed.), sec. 442.
3. Defendants assign as error the admission by the trial court of evidence tending to show that the railroad crossing on Lee Street was *Page 69 
peculiarly and unusually hazardous to travelers, and they except to the action of the court in submitting to the jury the question whether under all the circumstances this crossing was unusually hazardous, so as to require the railway company, in the exercise of due care, to erect gates, maintain a flagman, or provide other warning devices at the crossing to avoid injury to those traversing it.
It is apparent that under the allegations in the complaint, and the testimony offered in support thereof, there was no error in submitting to the jury the evidence pertaining to this alleged element of negligent omission of duty on the part of the defendant railway company. Dudley v. R.R., 180 N.C. 34, 103 S.E. 905; Blum v. R. R., 187 N.C. 640,122 S.E. 562; Batchelor v. R. R., 196 N.C. 84, 144 S.E. 542; Moseley v. R.R., 197 N.C. 628, 150 S.E. 184; Eller v. R. R., 200 N.C. 527,157 S.E. 800; Nash v. R. R., 202 N.C. 30, 161 S.E. 857; Harper v. R. R.,211 N.C. 398, 190 S.E. 750; White v. R. R., 216 N.C. 79. It is well settled that where a railroad track crosses, at the same level, a public road or street, the law imposes upon the operator of the railroad the duty to give reasonable and timely warning of the approach of a train to the crossing. Ordinarily, at a grade crossing where no unusually dangerous or hazardous conditions exist, timely signals by sounding the bell or blowing the whistle are deemed adequate. But where there are circumstances of more than ordinary danger and where the surroundings are such as to render the crossing peculiarly and unusually hazardous to those who have a right to traverse it, a question of fact is raised for the determination of the jury whether under the circumstances the operator of the railroad has exercised due care in providing reasonable protection for those who use the crossing, and whether the degree of care which the operator of the railroad is required to exercise to avoid injury at grade crossings imposes the duty to provide safety devices at the crossing. It was said in R. R. v. Ives,144 U.S. 408, quoted in Batchelor v. R. R., 196 N.C. 84: "It seems, however, that before a jury will be warranted in saying, in the absence of any statutory direction to that effect, that a railroad company should keep a flagman or gates at a crossing, it must be first shown that such crossing is more than ordinarily hazardous; as, for instance, that it is a thickly populated portion of a town or city; or, that the view of the track is obstructed either by the company itself or by other objects proper in themselves; or, that the crossing is a much traveled one and the noise of approaching trains is rendered indistinct and the ordinary signals difficult to be heard by reason of bustle and confusion incident to railway or other business; or, by reason of some such like cause."
It is a question of due care under the circumstances. The railroad company must use such reasonable care and precaution as ordinary *Page 70 
prudence would indicate. R. R. v. Kuhn, 86 Ky. 578; 22 R.C.L., 990. Where the conditions existing at or about the crossing are such as to render the crossing dangerous and hazardous to the traveling public and tend to render the sounding of whistle or bell on the engine inadequate, evidence of such conditions is admissible to aid the jury in determining whether under all the circumstances the railroad company has exercised due care in giving reasonable and timely warning of the approach of the train, and it becomes a question for the jury whether the degree of care which the railroad company is required to exercise to avoid injuries at crossings imposes the duty to provide additional safety devices. Moseley v. R. R.,supra, 60 A.L.R., 1096.
In Moseley v. R. R., supra, it was said: "Where the evidence shows a railroad crossing is for any reason peculiarly dangerous, it is a question for the jury whether the degree of care which a railroad company is required to exercise to avoid accidents at crossings imposes on the company the duty to provide safety devices at the crossing."
Upon this phase of the case the trial judge instructed the jury as follows: "Where a railroad crossing is not peculiarly and unusually dangerous, the exercise of due care on the part of the railroad company does not require it to provide gates, signal devices, watchman, or other such safety methods. However, the exercise of due care on the part of the railroad company may require the erection of gates or signal device or the maintenance of a watchman where the crossing is unusually and peculiarly hazardous. It is for the jury to say whether the crossing in question was, under all the circumstances, peculiarly and unusually hazardous so as to require the railroad in the exercise of due care to erect gates or signal devices or maintain a flagman or such other means of warning and safety. If it should appear that a crossing is a much-used one and situated in a populous area, those facts standing alone are not sufficient to constitute such crossing peculiarly and unusually hazardous so as to require the railroad, in the exercise of due care, to provide gates or signal devices or a watchman or such other means of warning. However, peculiar and particular hazard may arise where the crossing is in a populous community, where it is much used, where there are conditions such as to obstruct the traveler's view as he approaches and enters upon the crossing, where there is noise and confusion and other conditions reasonably calculated to distract the traveler's attention and prevent him from seeing and hearing an approaching train."
After stating the evidence pertaining to this phase of the case, and arraying the contentions of both plaintiff and defendants thereon, the court charged the jury as follows: "The court charges you that if the plaintiff has satisfied you by the greater weight of the evidence, the burden being upon the plaintiff, that the crossing in question, referred *Page 71 
to as North Lee Street crossing, was peculiarly and unusually hazardous, and that the railway company failed to provide gates or signal devices or a flagman or other such means of warning, then the court charges you that such failure on the part of the defendant railway company would constitute negligence, and if you further find from the evidence and by its greater weight that such negligence was the proximate cause of the plaintiff's injury and damage, it would be your duty to answer the first issue, yes." . . .
The defendants excepted to that portion of the charge last quoted. In their brief they challenge the correctness of this instruction on the ground that there was no evidence that the crossing was peculiarly hazardous, so as to justify the submission to the jury of the question of absence of gates, or flagman as an element of negligence. It is apparent that the reason assigned in the brief for bringing forward this exception is insufficient and not borne out by the evidence. Hence, consideration of other aspects of this excerpt from the charge might be deemed not required on this record. (Supreme Court Rules 28 and 27 1/2.) However, appellants' exception duly noted should doubtless warrant us in examining the instruction further, and taking note of the omission of reference to due care in the sentence objected to. This clause standing alone would be erroneous, in that it would seem to imply that, upon proof of the unusual hazard of a crossing, the failure to provide gates, signal devices or flagman would itself constitute negligence upon the part of the railroad company, rather than furnishing evidence from which the jury might find the railway company had failed to exercise due care with respect to the use of reasonable and timely warning devices. R. R. v. Perkins, 125 Ill. 127; R.R. v. Ives, supra.
But an examination of the entire charge on this point in which the correct rule was repeatedly stated, in connection with other portions of a clear and accurate charge on the law of negligence and contributory negligence applicable to the evidence in this case, leads us to the conclusion that the jury was not misled or the defendants in any way prejudiced thereby. The appellants in their brief do not contend that the result was influenced by the omission herein pointed out. The point of their objection is that the judge erred in referring to the matter at all, rather than in any omission in the language in which his instructions were couched.
An appellate court, by careful examination, may not infrequently find errors in language used or omitted by the trial judge in his instructions to the jury upon issues of fact, but in accord with a less technical and more liberal conception of the power to review, the court may also, upon due consideration of all the circumstances surrounding the trial and in the light of the matter under investigation, perceive that the errors *Page 72 
complained of neither misled the jury nor affected the impartiality of the trial.
"Verdicts and judgments are not to be set aside for harmless error, or for mere error and no more. To accomplish this result, it must be made to appear not only that the ruling complained of is erroneous, but also that it is material and prejudicial, amounting to a denial of some substantial right." Wilson v. Lumber Co., 186 N.C. 56, 118 S.E. 797; Collins v.Lamb, 215 N.C. 719, 2 S.E.2d 863.
4. We have examined the other exceptions noted and find in them no prejudicial error. The defendants' requests for instructions, embodying applicable principles of law, were substantially given in the general charge on the law of negligence and contributory negligence. Carter v. R.R., 165 N.C. 244, 81 S.E. 321. Those containing requests for peremptory instructions were properly refused. The request that the court instruct the jury to answer the issue of contributory negligence in favor of defendants, unless the jury found the vision of plaintiff was obstructed by fog or mist, ignored the relevancy of the testimony of plaintiff as to other obstructions. The exception to the exclusion of the proffered testimony of a witness as to the contents of his weather report for 7 December, 1937, cannot be sustained. The weather report was admitted in evidence and the witness testified the weather on the 7th and 8th was clear.
After a careful examination of the record in this case, we conclude that the issues of fact raised by the pleadings were fairly submitted to the jury, and that in the trial there was no error which should warrant us in setting aside the verdict and judgment of the Superior Court.
No error.