ZACK HARPER, ADMINISTRATOR OF EMMETT C. HARPER, DECEASED, v. SEABOARD AIR LINE RAILWAY CO., INC., AND L. R. POWELL, JR., AND HENRY W. ANDERSON, RECEIVERS FOR SEABOARD AIR LINE RAILWAY CO., INC., AND HAYWOOD SMITH.

(Filed 7 April, 1937.)

**1. Process § 4b——Service on agent of receivers of insolvent corporation held not service on the corporation.**

The court found, upon defendant corporation's motion to dismiss for want of service, that the corporation was in receivership at the time the action was instituted, that personal service was had on the agent of the receivers, but that the agent had at no time been an agent of the corporation since its receivership, although he had been an agent of the corporation prior thereto. *Held:* The facts found support the judgment dismissing the action as to the corporation on the ground that no service had been had upon it.

**2. Trial § 22——**

Upon motion to nonsuit, the evidence which makes for plaintiff's claim, or tends to support his cause of action, is to be taken in its light most favorable to plaintiff, and he is entitled to every reasonable intendment thereon and every reasonable inference therefrom. C. S., 567.

**3. Automobiles § 20b——Evidence held for jury on contention that intestate and driver were not engaged in joint enterprise.**

Evidence that the owner of a truck engaged in hauling merchandise for hire permitted customers hauling tobacco to ride on the truck to market without extra charge, and that plaintiff's intestate was so riding on the truck on the way to market and that at the time the truck was driven by the owner's employee, who was authorized to collect the transportation charges from the owners of the tobacco, *is held* plenary to be submitted to the jury on plaintiff's contention that his intestate was not engaged in a joint enterprise with the driver of the truck, and that therefore the negligence of the driver would not be imputed to him.

**4. Automobiles § 21: Negligence § 6——Passenger on truck may hold all parties liable whose negligence was concurring proximate cause of injury.**

In an action against the driver of a truck and the receivers of a railroad company by the administrator of a passenger on the truck to recover for intestate's death in a collision, plaintiff may not recover of the receivers if the driver's negligence was the sole proximate cause of the injury, but where the driver's negligence is not imputed to intestate, plaintiff may recover of the receivers, if their agents operating the train were guilty of negligence which, in any degree, was a concurring proximate cause of the injury, since the negligence of one tort-feasor will not exonerate other tort-feasors.

**5. Railroads § 9——Evidence held competent on question of whether crossing was so dangerous that railroad should have maintained safety devices.**

Evidence that a railroad company maintained no gates or electric warning signals or watchman at a crossing within the limits of an incor-

porated town, together with evidence that the crossing was partially obstructed by houses and buildings and tall weeds, and that the crossing was much used by pedestrians and vehicles, is competent on the question of whether the crossing was so dangerous that the railroad company should have provided such safety devices in the exercise of due care.

**6. Same—Evidence that railroad's negligence concurred in proximately causing accident at crossing held sufficient in guest's action.**

The evidence tended to show that a railroad company's motor train approached a much used crossing in an incorporated town at an excessive speed without giving any warning signal, that the driver of a truck approaching the crossing at twenty miles per hour, with his vision of the crossing partially obstructed, did not see the motor train until within about ten feet of the track, at which time the whistle blew, that the driver put on brakes but was unable to stop the truck before it ran into the side of the front part of the train, with evidence that no watchman or warning devices were maintained at the crossing, and that the horn or whistle on the motor train was similar to that on large trucks or automobiles and unlike the whistle on a steam locomotive, *is held* sufficient to be submitted to the jury, in an action against the receivers of the railroad company by the administrator of a passenger on the truck who was killed in the collision, on the issue of whether the receivers' agents were guilty of negligence which was a concurring proximate cause of the accident, the negligence of the driver of the truck not being imputed to plaintiff's intestate.

APPEAL by plaintiff from *Spears, J.,* at September Term, 1936, of LENOIR. Affirmed on plaintiff's appeal as to railway company; reversed on plaintiff's appeal as to receivers.

This is an action for actionable negligence, brought by Zack Harper, administrator of Emmett C. Harper, deceased, against defendants for killing his intestate at a railroad crossing, alleging damage. The complaint alleges in detail a cause of action against the defendants. The defendants (except Haywood Smith, who filed no answer) denied the material allegations of the complaint in regard to negligence, and set up the plea of contributory negligence. The defendants also entered a special appearance and moved that action against Seaboard Air Line Railway Co., Inc., be dismissed on account of lack of service. The facts and law applicable will be set forth in the opinion.

*J. S. Manning, Wallace & White, and J. A. Jones for plaintiff.*
*Rouse & Rouse and Varser, McIntyre & Henry for defendants.*

CLARKSON, J. In regard to the action against the defendant Seaboard Air Line Railway Co., Inc., the record discloses: "Upon the call of the case and before the jury was impaneled, the Seaboard Air Line Railway Company, through counsel, entered a special appearance and moved to dismiss the action as to it, for that said Seaboard Air Line Railway

Company, a corporation, was in receivership, and no service of summons had been made upon it. Evidence was taken on said motion as appears in the record. The motion was allowed and judgment entered, to which said judgment plaintiff excepted, assigned error, and appealed to the Supreme Court."

The judgment in the court below was as follows: "This cause coming on to be heard before his Honor, Marshall T. Spears, Judge presiding, and at the reading of the pleadings the Seaboard Air Line Railway Company, a corporation, through counsel entered special appearance and moved to strike out the return of service herein in so far as it purported to relate to it, on the ground that H. D. Wood, upon whom service appeared to have been made, was not in fact at the time of said service the agent of the Seaboard Air Line Railway Company, a corporation. The court heard the testimony offered on behalf of said motion (none being offered *contra*) and therefrom finds facts as follows: (1) That the Seaboard Air Line Railway Company, a corporation, was on 23 December, 1930, placed in a receivership by decree of the District Court of the United States for the Eastern District of Virginia, Norfolk Division, in a certain equity cause therein pending, entitled 'Bethlehem Steel Company *v.* Seaboard Air Line Railway Company,' and that all of the property of the said Seaboard Air Line Railway Company has been operated since said date by the receivers thereof, who had employed all the agents that had been in charge of any of the operations thereof since said date. (2) That H. D. Wood was on 23 December, 1930, employed by said receivers as agent for said receivers at Raleigh, N. C., and was prior to said date agent of the Seaboard Air Line Railway Company, and that the said H. D. Wood has since said date continuously been in the employment of the said receivers, and has not at any time since 23 December, 1930, been in the employ of the Seaboard Air Line Railway Company, a corporation, in any capacity whatsoever. (3) That service of summons herein has not been made on the Seaboard Air Line Railway Company, a corporation. Now, therefore, it is ordered that service of summons appearing herein, in so far as it relates to the Seaboard Air Line Railway Company, a corporation, is stricken out, and this action is dismissed as to the said Seaboard Air Line Railway Company, a corporation, and to this ruling the plaintiff excepts. Marshall T. Spears, Judge presiding."

The exception and assignment of error made by plaintiff is to the judgment. The question: Are the facts found sufficient to support the judgment? We think so. In fact, there is no evidence that H. D. Wood, at the time he was served with summons, was the agent of the Seaboard Air Line Railway Company, Inc. He was agent alone of the defendant

receivers. The cases cited by plaintiff are not applicable to the factual situation here presented.

At the close of plaintiff's evidence, the defendant receivers made a motion in the court below for judgment as in case of nonsuit. C. S., 567. The court below sustained the motion, and in this we think there was error. The evidence which makes for plaintiff's claim, or tends to support his cause of action, is to be taken in its most favorable light for the plaintiff, and he is entitled to the benefit of every reasonable intendment upon the evidence, and every reasonable inference to be drawn therefrom.

The evidence on the part of plaintiff was to the effect that J. R. Davenport lived in Deep Run section of Lenoir County, N. C., and owned a Chevrolet truck (doors with glass in them—closed cab), which he used for hauling, and had a license to use it for hauling for hire. Part of the time since 1933 he hauled tobacco from the community to the various markets. He charged each party whose tobacco he hauled 75c per hundred pounds, and the arrangement was that the person who had tobacco hauled could ride on the truck to the market. The truck had a body 12½ feet long and 5 to 5½ feet wide, spread out over the wheels, and those who could not get in the cab would ride behind. No charge was made for riding. On the morning of 22 August, 1933, Haywood Smith, who was the employee of J. R. Davenport, had the truck turned over to him by Davenport to drive. He was at the wheel and in the cab with him were Lewis and Furney Davenport. There were 5,474 pounds of tobacco covered up on the truck belonging to different parties. Haywood Smith had the right to collect 75c per hundred pounds, which was charged for transporting the tobacco. Smith went to the different parties to get the respective loads. Those who did not go to the market had checks brought back and delivered to them. The truck was in good condition and had only been run 10 months—it was new when purchased. The tires were practically new, the brakes and mechanical condition were good. The truck had a double-wheel equipment on the rear. Haywood Smith was related by blood and marriage to some of the parties who went along with their tobacco. On the rear of the truck, where some of the parties who were riding on a bench sat, the pile of tobacco was 6 feet high between them and the cab. From the rear end of the pile of tobacco to the end of the truck was about 3½ feet. Zeb Brown was standing off to the end of the bench— left-hand corner. On the bench were Emmett C. Harper, plaintiff's intestate, and seven others. The parties were facing the direction which the truck was leaving. Of the twelve riding on the truck, nine were killed and the other three seriously injured.

The truck, with Haywood Smith driving, left Deep Run about 4:30 in the morning, reaching Lumberton (112 miles away), about 8:30 o'clock. He drove through Lumberton, crossed the River Bridge and turned at a filling station to the left, going toward Fairmont (about 10 miles south), and was driving the truck when the collision took place. The horn or whistle on the two-motor car, driven by defendant railroad, was similar to that on large trucks or automobiles and not like a whistle or bell on a steam engine.

The evidence is plenary to be submitted to the jury that Haywood Smith, the employee of J. R. Davenport, owner of the truck for hire, was not engaged in a joint enterprise or joint venture with the plaintiff's intestate and others riding on the truck.

It is well settled in this jurisdiction that negligence on the part of a driver of a car will not ordinarily be imputed to another occupant unless such other occupant is the owner of the car or has some kind of control over the driver. They must be engaged in a joint enterprise or joint venture. Automobile driver's negligence is not, as a general rule, imputable to a passenger or guest. *Earwood v. R. R.,* 192 N. C., 27 (30); *Albritton v. Hill,* 190 N. C., 429 (431); *Campbell v. R. R.,* 201 N. C., 102 (107); *Sanders v. R. R.,* 201 N. C., 672 (676); *Newman v. Coach Co.,* 205 N. C., 26 (28); *Johnson v. R. R.,* 205 N. C., 127 (133); *Keller v. R. R.,* 205 N. C., 269 (278-9); *Jernigan v. Jernigan,* 207 N. C., 831 (836-7).

It is the rule, also, that if the negligence of the driver is the sole proximate cause of the injury, the injured passenger or guest cannot recover. *Moss v. Brown,* 199 N. C., 189 (192). As to concurrent negligence, the rule is stated in *White v. Really Co.,* 182 N. C., 536 (537-8), thus: "Conceding that McQuay, the owner and driver of the Ford machine, was negligent, as it is quite apparent from the evidence he was, yet this would not shield the defendant from suit if its negligence was also one of the proximate causes of the plaintiff's injury. *Crampton v. Ivie,* 126 N. C., 894. There may be two or more proximate causes of an injury; and where this condition exists, and the party injured is free from fault, those responsible for the causes must answer in damages, each being liable for the whole damage instead of permitting the negligence of the one to exonerate the others. This would be so though the negligence of all concurred and contributed to the injury, because, with us, there is no contribution among joint tort-feasors. *Wood v. Public Service Corp.,* 174 N. C., 697. In *Harton v. Tel. Co.,* 141 N. C., 455, the following statement of the law is quoted with approval: ' "To show that other causes concurred in producing or contributing to the result complained of is no defense to an action for negligence. There is, indeed, no rule better settled in this present connection than that the

defendant's negligence, in order to render him liable, need not be the sole cause of the plaintiff's injuries. . . . When two efficient proximate causes contribute to an injury, if defendant's negligent act brought about one of such causes he is liable." ' See, also, 21 A. & E. (2 Ed.), 495, and note." *Hinnant v. Power Co.,* 187 N. C., 288.

The above principle has been recognized so long that it is not necessary to cite further authorities. It was recognized recently in *Trust Co. v. R. R.,* 209 N. C., 304 (308), and *Smith v. Sink,* 210 N. C., 815 (817).

The highway to Fairmont, about 175 yards from the point of the collision, forks and leaves No. 20 and goes on No. 70 to Fairmont. The surface of the road is asphalt. The highway runs practically north and south and the railroad east and west. In going to the point of the collision, the road is not level, but .is slightly elevated, going up to the railroad and then down. The first building on the right of the highway is a church, and then on up to the railroad are some stores built close together—some three. Back of the church are a pine thicket and a few houses. Across the railroad is a store, and there is a road between the store and the railroad running parallel with it and five or six houses face on it. On the left side is a colored school building, about 150 feet from the railroad track. The grade crossing where the collision occurred is in the corporate limits of the town of Lumberton. The Fairmont road was the main traveled road which led from Lumberton to Fairmont. The tobacco market was open at the time and had been for a few weeks, and was a tobacco market for years. At this time of the year there was a lot of traffic, cars practically all the time on the road, especially early in the morning before the sales and late in the evening as people returned. Persons used the road as a street to walk over. A good many colored people used it—the section is inhabited mostly by colored people and the school was a colored school. Many trucks went through hauling tobacco towards Fairmont. Ran Evans' store was about 100 feet from the railroad track on the right-hand side, the way the truck was being driven. As you approached the railroad on the right-hand side was a sign "R.R." There were telegraph poles up and down the railroad. There were regular crossing signs with "Railroad Crossing" written on them, east and west. There are no North Carolina stop signs on either side, nor were there any gate, electric gongs, or lights.

On the morning in question, when the wreck occurred, the train was going east towards Lumberton, the truck was going south towards Fairmont, which put the engineer on the opposite side from that which the truck was approaching. Until the collision no whistle was blown or bell rung. The train had two cars and was not a steam engine; it was a motor car. The sound made by it was not as loud as that made by a

steam engine. It was running about 45 to 50 miles an hour. Haywood Smith, the driver of the truck, testified, in part: "I put the truck in second gear and made my turn and kept on up the road in second gear, and I saw a colored man waving at me, I was almost on him, I thought he was wanting to catch a ride to Fairmont, during the time I was beginning to pass or passing this colored man waving, I changed my gears from second to high and had not been but just a little ways before I happened to see the train coming right in front of me, saw it right through the windshield when I first saw the train, and the whistle began to blow as I saw it. Up to that moment no whistle had blown or a bell rung. The train was almost on the road when I saw it. It was approaching from my right, going east. I could not say whether I saw the train before I heard the whistle, but as I saw the train through the windshield I heard the whistle blowing. At that time I was within 8 or 10 feet of the track over which the train was passing. I put on all the brakes I had and tried to prevent going into it but I didn't have brakes enough to stop it. The truck and train came in contact with each other somewhere about the front of the front car (about the No. 2002 on the train and 20 feet from the front), I struck the front car. I don't know how close to the front of it. I did not see the train afterwards. I saw the train about 250 yards down the railroad track, but didn't see it at close-up view. The train was traveling at a fast rate of speed, 45 to 50 miles per hour, I would say. I was traveling about 20 miles per hour just before I saw it. I was knocked unconscious for a while. When I regained consciousness I was still in the truck. The truck was knocked off the road, just off the pavement, the hind wheels were still on the edge of the road and the front end was off of it. The rear wheels were on the shoulder part of the road. Emmett C. Harper was lying on the paved road, close to the side of the railroad. He was dead. He was lying pretty close to the railroad on the hard surfaced paved portion of the highway. Up to the moment when I saw the train and heard the whistle, I didn't know there was a railroad track there. I don't remember seeing any. I had driven over that road once before in the night-time in 1931, two years before this. I lived in the Deep Run section. I was not familiar with conditions existing there, and knew nothing about the general conditions there around Lumberton where this wreck happened. On one side of the cab the glass was rolled up and the other side lacked about 8 or 10 inches being rolled up to the top. That was on the left-hand side that the window was down about 8 or 10 inches, on the side that I was sitting on as I was driving. . . . Going from the filling station where I turned to my left off of No. 20 and on to the Fairmont road, before you could see the T-iron that crosses the paved road, you have to be close to it to see it on the paved road. There was

not any gate or other similar structure at this crossing that let up and down when the train passed. There was not any watchman there either. There were no electric gongs or lights." Sitting in the truck, Haywood Smith's vision was about the same as that of a person standing on the ground.

Emmett C. Taylor testified, in part: "From the last building up to the railroad (Ran Evans' store) there was a growth of weeds, I would say that they came kinder around the embankment of the highway and would extend about half the distance from the store to the railroad. They were small weeds that went clean on close to the railroad, but those were not so tall. Those extending from near the store to about half the distance to the railroad would be something near my height, I would say; I would say something about like 5 feet is the best of my impression. The county road is on a fill and the railroad is likewise on a fill. I made an observation of where the railroad crossed the pavement at this point. The pavement was right up to the rail of the track, about the same height as the rail. . . . You would have to be near by, maybe within 10 feet of the railroad, before you could see the T-iron. . . . The fill as it goes up to the railroad and the fill as it goes up to the highway, I would say, is some 6 or 8 feet. They are both on a grade. The highway slopes slightly up to the railroad."

In *Blum v. R. R.,* 187 N. C., 640 (647-8), it is stated: "There was error against the plaintiff in giving this instruction that the jury should not consider it negligence that the defendants did not maintain automatic gong or other safety device at the crossing in question, and instructing them not to consider the absence of such a gong or other safety device in passing upon the first issue. This was a matter for the jury upon the evidence. In *Dudley v. R. R.,* 180 N. C., 34, this Court said: 'It was not error for the court to permit the plaintiffs to offer evidence that there was no automatic alarm or gates at the crossing, and the court properly left to the jury to say, upon all the attendant circumstances, whether the railroad company was negligent in not erecting gates. It was incumbent upon the defendant to take such reasonable precautions as were necessary to the safety of travelers at public crossings. 22 R. C. L., 988. This was a question of fact for the jury.' "

In *Moseley v. R. R.,* 197 N. C., 628 (638), it is written: " 'Where the evidence shows that a railroad crossing is for any reason peculiarly dangerous, it is a question for the jury whether the degree of care which a railroad company is required to exercise to avoid accidents at crossings imposes on the company the duty to provide safety devices at that crossing.' " In the *Moseley case, supra,* the matter is thoroughly discussed at pp. 638-9.

In *Keller v. R. R.,* 205 N. C., 269 (278), we find: "The evidence on the part of plaintiff was to the effect that plaintiff, Philip Keller, and

his witness, heard no whistle blow or bell ring. In *Harris v. R. R.,* 199 N. C., 798 (799), is the following: 'The law in this State does not impose upon the driver of a motor vehicle, on his approach to a public crossing, the duty, under all circumstances, to stop his vehicle before driving on the crossing. Whether, under all the circumstances, as the evidence tends to show and as the jury may find from the evidence, the failure of the driver to stop, as well as to look and listen for an approaching train at a railroad crossing, was negligence on his part, is ordinarily a question involving matters of fact as well as of law, and must be determined by the jury under proper instructions from the court,' " citing numerous authorities.

In *Earwood v. R. R.,* 192 N. C., 27 (29), is the following: "The crossing in controversy was a grade crossing, and, according to the evidence, one that was much used by the public. It was therefore the duty of the defendant to use due care in giving a timely warning of the approach of its train either by sounding the whistle or ringing the bell at the usual and proper place in order that those approaching or using the crossing could be apprised that the train was at hand. It is established law that failure to perform this duty constitutes negligence," citing many authorities. The *Earwood case, supra,* is in many respects similar to the present case. Also *Smith v. R. R.,* 200 N. C., 177; *Miller, Admr., v. Union Pac. R. R. Co.,* 290 U. S., 227, 78 Law Ed., 283.

In the judgment of the court below is the following: "The court heard the argument of counsel for plaintiff and said defendants, and, after considering the evidence and such argument, and *Herman v. R. R.,* 197 N. C., 718, and *Hinnant v. R. R.,* 202 N. C., 489, the court allows said motion, and the plaintiff excepts."

The learned and careful judge in the court below, we think, was in error in the ruling. We think the cases are distinguishable from the case at bar, and the facts in the present case are sufficient for the jury to determine under proper instructions, and not for the court. There was more than a scintilla of evidence. This is an action for actionable negligence by a passenger or guest, for concurrent negligence, which arises where the injury is proximately caused by the concurrent wrongful acts or omissions of two or more persons acting independently.

Affirmed on plaintiff's appeal as to railway company.

Reversed on plaintiff's appeal as to receivers.