STATE OF NORTH CAROLINA EX REL. UTILITIES COMMISSION AND THE
    LUMBEE INDIANS OF ROBESON COUNTY OF ALLENTON COMMUNITY
    v. SEABOARD COAST LINE RAILROAD COMPANY

No. 8210UC521

(Filed 21 June 1983)

1. Railroads § 2; Utilities Commission § 7— repair of drainage ditches along railroad tracks—jurisdiction of Utilities Commission

   The Utilities Commission had jurisdiction under G.S. 62-42 and G.S. 62-235 to consider a petition seeking to require a railroad to repair and improve drainage ditches along its tracks in an area of Robeson County insofar as the condition of the drainage ditches related to the safe and proper maintenance of the railroad's track facilities.

2. **Railroads § 2— Federal Railroad Safety Act—local safety hazards—jurisdiction of states**

The Federal Railroad Safety Act of 1975, 45 U.S.C. § 421 *et seq.*, permits the states to continue to exercise safety jurisdiction over local safety hazards. Therefore, the Act did not preempt action by the Utilities Commission requiring a railroad to repair drainage ditches along only a few miles of its tracks.

3. **Railroads § 2; Utilities Commission § 12— violation of federal track safety standards—local safety hazard—jurisdiction of Utilities Commission**

A finding by the Utilities Commission that a railroad violated the track safety standards promulgated by the Secretary of Transportation in failing properly to maintain its tracks in a local area did not invalidate its conclusion that such violation also constituted a local safety hazard over which the Commission had authority under G.S. Ch. 62, and the Commission did not invade the province of the Secretary of Transportation to promulgate and enforce railroad track safety standards by ordering the railroad to repair and improve drainage ditches along a few miles of its tracks.

4. **Railroads § 2; Utilities Commission § 12— requiring railroad to repair drainage ditches—no taking without due process**

The fact that an order of the Utilities Commission requiring a railroad to maintain its tracks by repairing drainage ditches along a portion thereof has the incidental benefit of allowing adequate drainage of nearby lands does not constitute a "taking" of the railroad's property without due process.

5. **Railroads § 2; Utilities Commission § 12— proceeding to require improvement of railroad track facilities—participation by Public Staff**

Although G.S. 62-15(e) limits the Public Staff's initiative in a proceeding to require a railroad to repair and improve its track facilities, the Utilities Commission acted within its authority under G.S. 62-15(g) in permitting the Public Staff to participate in such a proceeding.

APPEAL by respondent from the North Carolina Utilities Commission. Orders entered 4 August 1981 and 5 January 1982. Heard in the Court of Appeals 12 April 1983.

By its order of 23 May 1980, the Utilities Commission (hereinafter "Commission") served upon respondent railroad company (hereinafter "Seaboard") a complaint filed by petitioning citizens and landowners (hereinafter "petitioners"). In their complaint, petitioners sought to require Seaboard to open drainage ditches along its tracks in an area of Robeson County, petitioners alleging that the failure of Seaboard to keep its drainage ditches open caused flooding of their lands. The order of the Commission serving the complaint required Seaboard to either satisfy the demands of the complaint or file an answer. Seaboard answered, moved to dismiss for lack of jurisdiction and upon other grounds.

The Public Staff of the Commission (hereinafter "Public Staff") filed a reply to Seaboard's motion to dismiss. Seaboard then moved to remove the Public Staff from further participation in the proceedings. By its order of 8 May 1981, the Commission denied Seaboard's motion.

On 18 February 1981, the Commission opened a hearing on petitioners' complaint, culminated by its order of 4 August 1981. That order shows on its face that appearances at the hearing were entered by counsel for Seaboard and counsel for the Public Staff. The order reflects no appearances by counsel for petitioners *per se*. In its order, the Commission summarized the history of the proceedings, summarized the evidence adduced at the hearing, made findings of fact, entered conclusions, and concluded its order as follows:

IT IS, THEREFORE, ORDERED:

1. That the original Complaint and amended complaint filed in this docket requesting the Commission to order Seaboard Coast Line Railroad to correct the drainage problem on its track and right-of-way between Lumberton and Wilmington is hereby allowed. It is further ordered that the Motion of Seaboard to Dismiss the Complaint be denied.

2. That the Respondent, Seaboard Coast Line Railroad Company, shall undertake immediately, on the right-of-way of its Lumberton to Wilmington track between mileposts 302 and 306, to clean out its existing ditches on both sides of the track or, where necessary, to excavate new ditches, and either to upgrade its existing culverts so that they will carry water freely from one side of the track to the other, or, where necessary, to construct new culverts, so that the water that runs into and collects in said ditches and culverts will flow unobstructedly in an easterly direction from milepost 302 towards the Big Swamp. The work directed to be done by this Ordering Paragraph shall be completed on or before September 30, 1982.

3. The Commission shall retain jurisdiction of this mater pending the filing, on or before September 30, 1982, of a final report by Seaboard with this Commission and with the Public Staff stating that the work ordered to be done in Ordering Paragraph 2 has been completed.

ISSUED BY ORDER OF THE COMMISSION.

This the 4th day of August, 1981.

Pursuant to the provisions of G.S. 62-90, Seaboard duly filed notice of appeal and exceptions to the Commission's order of 4 August 1981. Following oral arguments, participated in by Seaboard and the Public Staff, the Commission, by its order of 5 January 1982, overruled Seaboard's exception and affirmed its order of 4 August 1981.

Seaboard has appealed from both orders.

*Executive Director of the Public Staff Robert Fischbach, by Theodore C. Brown, Jr., Gisele L. Rankin, and Karen E. Long, for appellees.*

*Maupin, Taylor & Ellis, P.A. by Frank P. Ward, Jr., and M. Keith Kapp; Law Department of Seaboard Coast Line Railroad, by John T. Alderson, Jr. and Neill W. McArthur; and McLean, Stacy, Henry & McLean, by Everette L. Henry, for appellant.*

WELLS, Judge.

[1] In its first assignment of error, Seaboard contends that the Commission lacks jurisdiction under the laws of North Carolina to consider petitioners' complaint. The heart of Seaboard's argument is that petitioners' complaint addresses a dispute between petitioners and Seaboard which is essentially private in nature, in the nature of a complaint in tort and not related to or within the powers of the Commission to regulate railroads as public utilities. Seaboard correctly argues that the Commission is a statutory body possessing only the authority conferred upon it by the General Assembly. *See Utilities Commission v. National Merchandising Corp.*, 288 N.C. 715, 220 S.E. 2d 304 (1975). We, therefore, turn to the statutory grant of authority pertinent to the issues in this case. In addition to other grants of general supervisory and regulatory authority over public utilities found in Chapter 62 of the General Statutes, G.S. 62-42 provides, in pertinent part, as follows:

(a) Whenever the Commission, after notice and hearing had upon its own motion or upon complaint, finds:

(1) That the service of any public utility is inadequate, insufficient or unreasonably discriminatory, or

. . .

(3) That additions, extensions, repairs or improvements to, or changes in, the existing plant, equipment, apparatus, facilities or other physical property of any public utility, of any two or more public utilities ought reasonably to be made, or

(4) That it is reasonable and proper that new structures should be erected to promote the security or convenience or safety of its patrons, employees and the public, or

(5) That any other act is necessary to secure reasonably adequate service or facilities and reasonably and adequately to serve the public convenience and necessity.

The Commission shall enter and serve an order directing that such additions, extensions, repairs, improvements, or additional services or changes shall be made or affected within a reasonable time prescribed in the order. . . .

G.S. 62-235 provides:

*Commission to inspect railroads as to equipment and facilities, and to require repair.*

The Commission is empowered and directed, from time to time, to carefully examine into and inspect the condition of each railroad, its equipment and facilities, in regard to the safety and convenience of the public and the railroad employees; and if any are found by it to be unsafe, it shall at once notify and require the railroad company to put the same in repair.

In order to put the Commission's jurisdictional standing in proper perspective, it is necessary to refer to the findings of fact made by the Commission.[1] The pertinent findings are as follows:

1. We note that Seaboard has excepted to many of these findings. Such exceptions will be dealt with in this opinion. The findings are used here only to establish a factual background against which the question of jurisdiction must be viewed.

FINDINGS OF FACT

1. The Complainants are residents and landowners in the Allenton Community of Robeson County, which community is on N.C. Highway 211 a few miles east of Lumberton. The land of the Complainants, which is used mostly for farming and homesites, abuts or is near Seaboard's railroad track and right-of-way under consideration in this proceeding.

. . .

4. Seaboard owns and maintains a railroad track which runs in an eastwardly direction from Hamlet to Wilmington, North Carolina. This track runs through the Town of Lumberton and near the community of Allenton in Robeson County. The railroad track and right-of-way under consideration in this proceeding begins at the Seaboard milepost 302 near Allenton, just west of the intersection of State Road 1002 and the track, and ends at milepost 306 in the Big Swamp, just west of the Robeson-Bladen county line. . . .

5. Between milepost 302 and milepost 306 Seaboard maintains a drainage system on both sides of the railroad track and entirely within the 200-foot right-of-way. There are roadbed ditches which collect the water that falls on the track and the roadbed and on the area around the right-of-way; these ditches are designed to carry the water to the crossings of natural waterways. Seaboard also maintains on its right-of-way various pipes or culverts underneath the track, which are designed to drain water from one side of the track to the other.

6. The elevation of the land alongside the railroad track from milepost 302 near Allenton to milepost 306 in the Big Swamp generally slopes downward toward the Big Swamp.

7. The natural flow of water in the area alongside the track and right-of-way is more or less in an easterly direction toward and into the Big Swamp.

8. The ditches and culverts maintained by Seaboard on its right-of-way between milepost 302 and milepost 306 are in various states of disrepair and, as a consequence, are unable to accommodate and to carry away the water which collects in these ditches and culverts.

9. Debris such as pulpwood and abandoned crossties are in some of the ditches maintained by Seaboard between mileposts 302 and 306; this debris inhibits or prevents the water collecting in these ditches from flowing toward a natural watercourse. Other ditches have become filled in with dirt and vegetation or are virtually nonexistent.

10. Many of the railroad's culverts underneath the track between mileposts 302 and 306 have become filled in with dirt and debris and are incapable of property draining water from one side of the track to the other; the outlets of some culverts are higher than the ditches they were designed to serve.

11. The water collecting and standing in these ditches and culverts backs up and spills out onto the land adjoining the railroad right-of-way. . . .

. . .

13. At or near Seaboard's hot box detector house, which is located at the intersection of State Road 2118 and the track, the railroad's ditches and tiles on either side of the track have become filled in, further inhibiting the natural flow of water towards the Big Swamp.

14. At or near milepost 303, the rails "swing" or "pump" in muddy, fouled ballast that is unable to drain properly; this condition is unsafe and if it is not corrected, the track could deteriorate further and adversely affect the service of Seaboard over these rails.

15. Seaboard maintains a long trestle on this track just west of milepost 306. In 1919 the trestle was approximately 650 feet long; today it is 262 feet long. Seaboard shortened the trestle by filling it in with dirt and riprap to prevent erosion. The effect of this shortening is to create a weirlike effect, which retards the flow of water along the railroad's ditches towards the Big Swamp.

16. In March 1979, the Commission's track inspector investigated the condition of the track, roadbed, and drainage facilities between mileposts 302 and 306; in his report he noted the standing water in the ditches unable to drain and

the "pumping" or "swinging" rails. He testified in the February 1981 hearing that the same conditions exist today.

17. The Commission has adopted and enforces the Track Safety Standards of the Federal Railroad Administration. These standards are applicable to Seaboard's drainage facilities under consideration herein. Section 213.33, which relates to drainage, reads as follows:

"Each drainage or other water carrying facility under or immediately adjacent to the roadbed must be maintained and kept free of obstruction, to accommodate expected water flow for the area concerned."

These track standards also incorporate a number of drainage violations, which are identified by a defect code. These violations are:

"33.01 Drainage or water carrying facility not maintained.

33.02 Drainage or water carrying facility obstructed by debris.

33.03 Drainage facility collapsed.

33.04 Drainage or water carrying facility obstructed by vegetation.

33.05 Drainage or water carrying facility obstructed by silting.

33.06 Drainage facility deteriorated to allow subgrade saturation.

33.07 Uncontrolled water undercutting track structure or embankment."

18. The ditches and culverts maintained by Seaboard on its right-of-way between mileposts 302 and 306 do not comply with Section 213.33 of the Track Safety Standards. These ditches and culverts also violate defect codes 33.01—Drainage or water carrying facility not maintained; 33.02, 33.04, and 33.05—Drainage or water carrying facility obstructed by debris, vegetation, and silting; and 33.06—Drainage facility deteriorated to allow subgrade saturation.

19. The failure of Seaboard to maintain its drainage facilities in compliance with the above-described Track Safety Standards results in the drainage problems alongside the railroad's track and right-of-way between mileposts 302 and 306.

20. It is to the advantage of Seaboard to keep its ditches and culverts between mileposts 302 and 306 clean and open and properly maintained. Improperly maintained drainage facilities offer the potential of undermining the rail roadbed and could ultimately cause a derailment.

. . .

23. Repairs and improvements to Seaboard's drainage ditches and culverts between mileposts 302 and 306 ought reasonably to be made so that the water which runs into and collects therein can flow unobstructedly toward the Big Swamp.

The foregoing findings show the existence of hazardous conditions affecting a portion of Seaboard's track facilities. Without regard to whether such conditions affect the lands of petitioners in any respect, such conditions, as they relate to the safe and proper maintenance of Seaboard's track facilities are sufficient to invoke the Commission's jurisdiction under the provisions of Chapter 62 of the General Statutes. Indeed, once called to the Commission's attention, such conditions are sufficient to require remedial action by the Commission. This assignment is overruled.

[2] In its second argument, Seaboard contends that the Congress of the United States has enacted legislation which has the effect of preempting the field of railway safety and that the Commission's action was therefore invalid. The act of Congress upon which Seaboard relies is the Federal Railroad Safety Act of 1975, codified as 45 U.S.C. sections 421-444.

Sec. 434 of the act is as follows:

*National uniformity of laws, rules, regulations, orders, and standards relating to railroad safety; State regulation*

The Congress declares that laws, rules, regulations, orders, and standards relating to railroad safety shall be nationally uniform to the extent practicable. A State may adopt

or continue in force any law, rule, regulation, order, or standard relating to railroad safety until such time as the Secretary has adopted a rule, regulation, order, or standard covering the subject matter of such State requirement. A State may adopt or continue in force an additional or more stringent law, rule, regulation, order, or standard relating to railroad safety when necessary to eliminate or reduce an essentially local safety hazard, and when not incompatible with any Federal law, rule, regulation, order, or standard, and when not creating an undue burden on interstate commerce.

We are persuaded that the congressional intent expressed in the foregoing section clearly allows the respective States to continue to exercise safety jurisdiction over local safety hazards. Courts in other jurisdictions agree with us. *See National Association of Regulatory Utility Commissioners v. Coleman*, 542 F. 2d 11 (3 Cir. 1976); *Consolidated Rail Corporation v. Pennsylvania Public Utility Commission*, 536 F. Supp. 653 (E.D. Pa.), *affirmed*, 696 F. 2d 981 (3 Cir. 1982); *Bessemer and L.E.R. Co. v. Penn. Public Utility Comm., Pa. Cmwelth.*, 368 A. 2d 1305 (1977); *compare Donelon v. New Orleans Terminal Company*, 474 F. 2d 1108 (5 Cir.), *cert. denied*, 414 U.S. 855, 94 S.Ct. 157, 38 L.Ed. 2d 105 (1973). The hazard under review by the Commission in this case could not be described in any other way than "essentially local" in nature as it involved only a few miles of respondent's tracks, all in one general contiguous local area. The Commission's order did not attempt or purport to lay down any generally applicable rule with respect to Seaboard's track system, but only responded to those local hazards it found to exist.

Seaboard's second assignment is overruled.

[3]  In its next assignment, Seaboard argues that the Commission has invaded the exclusive province of the Secretary of Transportation to promulgate and enforce railroad track safety standards, as provided in the Railroad Safety Act. While we agree that under the act, the Secretary has such exclusive authority to both promulgate and enforce track safety *standards*, the Commission's finding that Seaboard has violated the track safety standards promulgated by the Secretary of Transportation in failing to properly maintain its tracks in the local area complained of does not

invalidate its conclusions that such violation also constitutes a local safety hazard over which the Commission has authority under Chapter 62 of the General Statutes. The Commission did not attempt or purport to penalize Seaboard or assess damages against Seaboard for violations of Federal track safety standards. In the judgment portion of its order, such standards are not even mentioned, much less required to be conformed to. This assignment is overruled.

[4]  In its next assignment of error, Seaboard argues that the order of the Commission deprives Seaboard of its property for a public or private use without compensation, and without due process of law, in violation of the United States and North Carolina Constitutions. We do not agree. The Commission's order does no more than require Seaboard to maintain a small (short) segment of its track in a safe condition. If the order has the incidental benefit of allowing adequate drainage of nearby lands of petitioners, such an incidental benefit flowing from the expenditure Seaboard may have to make pursuant to the Commission's order does not constitute a "taking" of Seaboard's property. This assignment is overruled.

[5]  In its next assignment of error, Seaboard contends that the Commission erred in denying Seaboard's petition to remove the Public Staff from this case, because the Public Staff was acting beyond its statutory authority in appearing in the case. G.S. 62-15 contains the basic statutory provisions under which the Public Staff was created and functions. G.S. 62-15(d) enumerates various broad and specific duties, responsibilities, and authorities of the Public Staff, dealing with investigations, complaints, rate cases and other proceedings before the Commission.

G.S. 62-15(e) provides:

(e) The public staff shall have no duty, responsibility, or authority with respect to the laws, rules or regulations pertaining to the physical facilities or equipment of common, contract and exempt carriers, the registration of vehicles or of insurance coverage of vehicles of common, contract and exempt carriers; the licensing, training, or qualifications of drivers or other persons employed by common, contract and exempt carriers, or the operation of motor vehicle equipment by common, contract and exempt carriers in the State.

G.S. 62-15(g) provides:

(g) Upon request, the executive director shall employ the resources of the public staff to furnish to the Commission, its members, or the Attorney General, such information and reports or conduct such investigations and provide such other assistance as may reasonably be required in order to supervise and control the public utilities of the State as may be necessary to carry out the laws providing for their regulation.

Although the provisions of G.S. 62-15(e) would appear to limit the Public Staff's initiative in cases such as the one before us, G.S. 62-15(g) clearly provides the basis for the Commission to seek the Public Staff's assistance in such cases and that the Public Staff shall provide such assistance as may "reasonably be required." Construing these statutory provisions together and in context, we are persuaded that the Commission acted within its authority in allowing Public Staff participation in this case. This assignment is overruled.

Finally, Seaboard argues that the "remedial action" prescribed by the Commission is not based on competent, material, and substantial evidence and that the Commission's findings that Seaboard's tracks were in an unsafe condition were not so supported. Without burdening this opinion with a recitation of the lengthy and substantial evidence supporting the Commission's essential findings, we note that we have carefully examined the evidence and hold that the evidence supports the Commission's findings and that its findings support its conclusion and judgment. These assignments are overruled.

For the reasons given, the order of the Commission is

Affirmed.

Judges BECTON and EAGLES concur.