WILLIAM ROBERT COLLINS, PLAINTIFF-APPELLANT v. CSX TRANSPORTATION, INC., T. W. CULPEPPER, SEABOARD SYSTEM RAILROAD, INC., JOHN DOE RAILROAD COMPANIES, JOHN DOE RAILROAD OPERATOR, M. O. WILLIAMS, AND D. W. HARDY, DEFENDANT-APPELLEES

No. 9216SC420

(Filed 15 March 1994)

1. **Railroads § 2 (NCI4th)— crossing signals—federal preemption —common law duty not preempted**

The trial court erred in an action arising from a collision between a train and an automobile at a crossing by granting

defendant's motion *in limine* to exclude all evidence relating to defendant railroad's duty to signalize the crossing on the basis of federal preemption. The U.S. Supreme Court has recently held in *CSX Transportation v. Easterwood*, 123 L.Ed.2d 387, that a railroad's tort law duty to signalize railroad crossings is preempted only to the extent certain federal Code sections have application. Those sections concern railroad signalization where federal funds participate in the installation of warning devices; in this case, there is no indication that federal funds were used in connection with the grade crossing.

**Am Jur 2d, Railroads §§ 361-379.**

2. **Pleadings § 26 (NCI4th) — affirmative defense — not specially pled — gamesmanship — principles of professionalism**

Although federal preemption was otherwise held to be inapplicable, and there was no determination that defendants and their counsel had engaged in gamesmanship, there were grounds for concern where defendants did not specially plead federal preemption in a railroad crossing negligence case, discovery indicated that defendants were relying only on contributory negligence, and defendants raised federal preemption in a motion *in limine* to exclude evidence that defendant railroad had a duty to signalize the crossing five days before trial. Gamesmanship and actions designed to minimize adequate notice to one's adversary have no place within the principles of professionalism governing the conduct of participants in litigation.

**Am Jur 2d, Pleading §§ 152 et seq.**

3. **Railroads § 31 (NCI4th) — crossing — duty to signalize — not gross negligence**

The trial court did not err in a railroad crossing case by withholding a gross negligence instruction, and there was no prejudice from the exclusion of evidence of defendant's duty to install signals at the crossing, where, assuming that the conditions at the crossing rendered it extrahazardous, the failure to implement more extensive signalization in this case did not rise to the level of gross negligence. The fact that a crossing is extrahazardous ordinarily dictates only the necessity for certain types of warnings; the finder of fact must examine the danger presented by the crossing in order to

COLLINS v. CSX TRANSPORTATION

[114 N.C. App. 14 (1994)]

discern the level and type of warnings required. The circumstances here are more analogous to a typical rural grade crossing and are notably similar to other cases wherein only the issue of ordinary negligence was submitted.

**Am Jur 2d, Railroads §§ 508-513.**

Appeal by plaintiff from judgment and orders rendered 20 November 1991 and from order filed 20 December 1991 by Judge Wiley F. Bowen in Robeson County Superior Court. Heard in the Court of Appeals 31 March 1993.

*Rand, Finch & Gregory, P.A., by Thomas Henry Finch, Jr., for plaintiff-appellant.*

*Maupin Taylor Ellis & Adams, P.A., by John C. Millberg and Frank J. Gordon, for defendant-appellees.*

JOHN, Judge.

In this personal injury action, plaintiff appeals a judgment in favor of defendants based upon a jury verdict finding him contributorily negligent. He contends the trial court erred by (1) granting defendants' motion *in limine* to exclude certain evidence; (2) refusing to submit the issue of defendants' gross negligence to the jury; and (3) permitting defendants, post-verdict, to amend their pleadings to allege an affirmative defense. While we find one of plaintiff's arguments persuasive, we nonetheless hold the trial court committed no prejudicial error.

At approximately 9:20 a.m. on 12 November 1986, plaintiff was operating his pick-up truck on a roadway near the town of Rennert, North Carolina, at the location of an intersecting rural railroad crossing. The truck and a freight train operated by defendant CSX Railroad collided, causing plaintiff extensive bodily injury. It is uncontroverted that the train crossing was marked only by a crossbuck warning sign; there were no flashing lights, pavement markings or other warning signals.

Plaintiff's evidence tended to show the weather was rainy and foggy at the time of the accident and that these inclement conditions, coupled with foliage growing near the tracks, obscured his view of the oncoming train. Plaintiff testified he saw the reflection of the train's headlights immediately before impact. However,

neither plaintiff nor a motorist following his truck heard the train sound a warning signal.

Defendants' evidence indicated there were no significant visual obstructions in the immediate vicinity of the crossing. Cross-examination of plaintiff's expert witness in traffic safety further revealed that a motorist within 75′ of the crossing would have had a virtually unlimited view of any oncoming train even if the tracks were overgrown with foliage as contended by plaintiff.

Two CSX employees on the train at the time of the accident testified for defendants. According to defendant locomotive engineer T. W. Culpepper, the train was traveling at the authorized speed limit of 70 m.p.h. at the time of the accident, and he was blowing the whistle, ringing the bell, and burning the headlight as the train approached the crossing. Brakeman David W. Hardy also stated the whistle was sounded. In addition, both men testified Culpepper made an emergency brake application in an attempt to avoid the accident.

Ms. Barbara Burnette, who lived near the accident site, stated she heard the train whistle blowing immediately before the accident. A State Trooper who investigated the collision indicated he specifically looked for visual obstructions and that both plaintiff and the locomotive engineer had unobstructed views of the crossing.

The trial court submitted the issues of negligence, contributory negligence and damages to the jury. The jury found defendant negligent and plaintiff contributorily negligent and the trial court entered judgment in favor of defendants.

---

The crux of plaintiff's appeal is his contention that the railroad crossing in question was "extrahazardous" and that defendant railroad failed to take adequate precautions to diminish this danger. Therefore, plaintiff insists, defendant railroad was *grossly negligent* and the trial court erred by refusing to charge the jury on this theory of liability.

### I. *Federal preemption*

[1] Plaintiff's argument rests, in large part, upon the railroad being charged with an affirmative duty to signalize the crossing at issue. On the day of trial, the trial court granted defendants' motion *in limine*, filed five days previously, to exclude all evidence

relating to "any allegations that the [defendant] railroad had a duty to signalize the crossing in question." During the hearing on this motion, defendants argued the railroad's common law duty to signalize the crossing had been preempted by federal law, specifically by the "Federal Railroad Safety Act of 1970," 45 U.S.C. §§ 421-447 (1992). The trial court agreed and allowed the motion. We now examine that ruling.

Whether or not federal legislation preempts comparable state law ordinarily is resolved by ascertaining congressional intent; state law is preempted if Congress intended to do so. *English v. General Electric Co.*, 496 U.S. 72, 78-79, 110 L.Ed.2d 65, 74 (1990). Preemption occurs in three circumstances. *First*, where Congress has explicitly provided that state law is preempted. *Id.* at 79, 110 L.Ed.2d at 74. *Second*, in the absence of express language, where Congress has intended the federal government should exclusively occupy a particular field. *Id.* Such intent can be inferred where there exists:

a "scheme of federal regulation . . . so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it," or where an Act of Congress "touches a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject."

*Id.* at 79, 110 L.Ed.2d at 74 (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 91 L.Ed.2d 1447, 1459 (1947) ). *Third*, State law is preempted to the extent it actually conflicts with federal law. *English*, 496 U.S. at 79, 110 L.Ed.2d at 74.

Our law places a duty upon railroads "to give to users of the highway warning, appropriate to the location and circumstances, that a railroad crossing lies ahead." *Cox v. Gallamore*, 267 N.C. 537, 541, 148 S.E.2d 616, 619 (1966); *see also* N.C.G.S. § 62-224 (1989). Where the crossing is "extrahazardous," active or mechanical warnings may be required. *See Dixon v. CSX Transp., Inc.*, 990 F.2d 1440, 1449, 1453, *cert. denied*, --- U.S. ---, 126 L.Ed.2d 252 (1993). " '[M]echanical warnings ordinarily are required only at crossings so dangerous that prudent persons cannot use them with safety unless extraordinary protective means are used.' " *Price v. Seaboard R.R.*, 274 N.C. 32, 46, 161 S.E.2d 590, 600 (1968) (quoting 74 C.J.S. *Railroads* § 727(a) ).

The Federal Government has, however, entered the field of railroad crossing safety by virtue of the "Federal Railroad Safety Act of 1970" (the Act). 45 U.S.C. § 433 (1992). Section 434 of the Act specifically addresses the question of federal preemption and provides:

> The Congress declares that laws, rules, regulations, orders, and standards relating to railroad safety shall be nationally uniform to the extent practicable. A State may adopt or continue in force any law, rule, regulation, order, or standard relating to railroad safety until such time as the Secretary has adopted a rule, regulation, order, or standard covering the subject matter of such State requirement. A State may adopt or continue in force an additional or more stringent law, rule, regulation, order, or standard relating to railroad safety when necessary to eliminate or reduce an essentially local safety hazard, and when not incompatible with any Federal law, rule, regulation, order, or standard, and when not creating an undue burden on interstate commerce.

45 U.S.C. § 434. Since passage of the Act, several federal regulations have been promulgated which concern railroad crossing safety; these include: 23 C.F.R. §§ 646 pt. B, 655 pt. F, and 924 (1993).

This Court has held the foregoing federal legislation does not completely preempt the field of railroad safety and therefore North Carolina may "continue to exercise safety jurisdiction over local safety hazards." *State ex rel. Utilities Comm'n. v. Seaboard Coast Line R.R.*, 62 N.C. App. 631, 640, 303 S.E.2d 549, 555, *disc. review denied and appeal dismissed*, 309 N.C. 324, 307 S.E.2d 168 (1983). While *Seaboard Coast* did not concern the *signalization of railroad crossings* — a topic explicitly covered by the federal regulatory scheme — we nevertheless hold this common-law duty was also not preempted.

Recently, the U.S. Supreme Court held a railroad's tort law (state) duty to signalize railroad crossings is preempted *only to the extent either 23 C.F.R. §§ 646.214(b)(3) or (4) has application. CSX Transp. Inc., v. Easterwood*, --- U.S. ---, 123 L.Ed. 2d 387 (1993). Briefly summarized, these Code sections concern railroad crossing signalization where *"federal funds* participate in the installation of warning devices." *Easterwood*, --- U.S. ---, 123 L.Ed.2d at 401. In the case *sub judice*, there is no indication federal funds were used in connection with the grade crossing at issue. Accord-

ingly, the trial court erred by granting defendants' motion *in limine* (thereby excluding all evidence relating to defendant railroad's duty to signalize the crossing) on the basis of federal preemption.

[2] We note plaintiff has also argued that the type of federal preemption at issue constituted an affirmative defense. *See Johnson v. Armored Transport of California, Inc.*, 813 F.2d 1041, 1043-44 (1987) (A "choice-of-forum" preemption argument concerns subject matter jurisdiction and is therefore non-waiveable; however, a preemption argument involving only "choice-of-law" must be asserted as an affirmative defense). Ordinarily, an affirmative defense which is not specially pled is waived. *Duke Univ. v. St. Paul Mercury Ins. Co.*, 95 N.C. App. 663, 673, 384 S.E.2d 36, 42 (1989).

Because defendants did not specially plead federal preemption, plaintiff contends this "defense" was waived and therefore the trial court was without authority to consider preemption when it was raised in defendants' motion *in limine*. Plaintiff also vigorously argues the court erred by allowing defendants to amend their pleadings to add this "affirmative defense" after the jury's verdict. According to plaintiff, discovery indicated defendants were relying upon but one affirmative defense: the contributory negligence of plaintiff. It was therefore impermissible, plaintiff continues, to allow the addition of a new affirmative defense after the jury's verdict, particularly since plaintiff first received notice of this defense only 5 days before trial.

We agree that the timing and sequence of the motion *in limine* and motion to amend are grounds for concern, particularly in light of defendants' limited responses during discovery. Under these circumstances, plaintiff's implicit contention that defendants employed deliberate dilatory tactics under the guise of "litigation strategy" is hardly surprising. While emphasizing that we do not here determine defendants and their counsel to have engaged in such maneuvering, we nonetheless underscore that "gamesmanship" and actions designed to minimize adequate notice to one's adversary have no place within the principles of professionalism governing the conduct of participants in litigation. *See Willoughby v. Wilkins*, 65 N.C. App. 626, 641, 310 S.E.2d 90, 99-100 (1983), *disc. review denied*, 310 N.C. 631, 315 S.E.2d 697-98 (1984) (emphasis of the discovery process is on expeditious handling of information, *not on gamesmanship*); *see also* Model Code of Professional Responsibility, Rule 3.2 cmt. (1983) (Dilatory practices should not be used

"merely for the convenience of the advocates, or for the purpose of frustrating an opposing party's attempt to obtain rightful redress."). However, because we have already determined federal preemption was inapplicable to the case *sub judice*, we need not address further plaintiff's arguments concerning federal preemption as an affirmative defense.

## II. *Gross negligence*

[3] Although the trial court erred by excluding evidence of the railroad's duty to signalize the crossing, a new trial is required only if plaintiff suffered prejudice. *Dep't of Transp. v. Craine*, 89 N.C. App. 223, 226, 365 S.E.2d 694, 697, *disc. review denied*, 322 N.C. 479, 370 S.E.2d 221 (1988). Plaintiff suffered no prejudice on the issue of defendants' *negligence* because the jury, even absent the excluded evidence, found for plaintiff on that issue; the jury did not reach the damages issue because it found plaintiff contributorily negligent. Nevertheless, plaintiff contends the excluded evidence, combined with other evidence admitted at trial, warranted a jury instruction on the issue of defendant railroad's *gross negligence*. According to plaintiff, had the issue been submitted and the jury determined defendant to have been grossly negligent, plaintiff's (ordinary) contributory negligence would not have barred recovery.

It is well settled that contributory negligence will not bar recovery where the defendant is guilty of willful or wanton negligence. *Sorrells v. M.Y.B. Hospitality Ventures of Asheville*, 332 N.C. 645, 648, 423 S.E.2d 72, 74 (1992). Assuming without deciding that a contributorily negligent plaintiff can recover from a grossly negligent defendant, *compare Bullins v. Schmidt*, 322 N.C. 580, 583, 369 S.E.2d 601, 603 (1988) (equating gross negligence with "wanton conduct . . .") with *Morgan v. Cavalier Acquisition Corp.*, 111 N.C. App. 520, 536, 432 S.E.2d 915, 924 (recognizing a distinction between gross negligence and "willful and wanton conduct"), *disc. review denied*, 335 N.C. 238, 439 S.E.2d 149 (1993), we find no error in the trial court's withholding of the gross negligence instruction. The evidence in the case *sub judice* did not warrant such an instruction.

In a civil action, the trial court is under a duty to charge the jury on all substantial features of the case. *Adams v. Mills*, 312 N.C. 181, 186, 322 S.E.2d 164, 168 (1984). If a party argues that an opponent's acts or omissions constitute a particular claim

for relief, " 'the trial court must submit the issue with appropriate instructions if there is evidence which, when viewed in the light most favorable to the proponent, will support a reasonable inference of each essential element of the claim . . . .' " *Id.* at 186-87, 322 S.E.2d at 169 (quoting *Cockrell v. Cromartie Transport Co.*, 295 N.C. 444, 449, 245 S.E.2d 497, 500 (1978)).

Plaintiff argues defendant's gross negligence should have been submitted to the jury because the crossing was "extrahazardous" and required at least some type of mechanical warning device. He relies heavily upon a single decision of this Court.

Before we examine that previous decision and its application to the case *sub judice*, we note the failure to signalize an "extrahazardous" crossing properly does not automatically amount to gross negligence. Instead, the fact that a crossing is extrahazardous ordinarily dictates only the necessity for certain types of warnings. *See Dixon v. CSX Transp., Inc.*, 990 F.2d 1440, 1449, 1453 (1993) (Where the crossing is "extrahazardous," mechanical warnings may be required.); *Price v. Seaboard R.R.*, 274 N.C. 32, 45-46, 161 S.E.2d 590, 600 (1968) (Mechanical warnings are ordinarily required only where the crossing is so dangerous that a prudent person cannot use it unless there are extraordinary protective devices.). As stated by our Supreme Court:

> [W]here there are circumstances of more than ordinary danger and where the surroundings are such as to render the crossing peculiarly and unusually hazardous to those who have a right to traverse it, a question of fact is raised for the determination of the jury whether under the circumstances the operator of the railroad has exercised due care in providing reasonable protection for those who use the crossing, and whether the degree of care which the operator of the railroad is required to exercise to avoid injury at grade crossings imposes the duty to provide safety devices at the crossing.

> * * * *

> It is a question of due care under the circumstances. The railroad company must use such reasonable care and precaution as ordinary prudence would indicate. Where the conditions existing at or about the crossing are such as to render the crossing dangerous and hazardous . . . it becomes a question for the jury whether the degree of care which the railroad

company is required to exercise to avoid injuries at crossings imposes the duty to provide additional safety devices.

*Caldwell v. Southern Ry. Co.*, 218 N.C. 63, 69-70, 10 S.E.2d 680, 683-84 (1940) (citations omitted).

Under the aforementioned cases, the finder of fact thus first examines the danger presented by the crossing in order to discern what level and type of warnings are required. If the crossing is especially dangerous or hazardous, mechanical signals may be needed. Thereafter, the trier of fact turns to an examination of the defendant's culpability based on its failure to provide the warnings appropriate under the existing conditions and circumstances. Furthermore, while issues of negligence are most frequently jury questions, our examination of "duty to signalize" decisions reveals that generally these cases involve only issues of ordinary negligence — regardless of the "hazardousness" of the crossing. *See, e.g., Caldwell*, 218 N.C. 63, 10 S.E.2d 680; *Harper v. Seaboard Ry. Co.*, 211 N.C. 398, 190 S.E. 750 (1937); *Finch v. North Carolina R.R.*, 195 N.C. 190, 141 S.E. 550 (1928); and *Blum v. Southern Ry. Co.*, 187 N.C. 640, 122 S.E. 562 (1924). As our Supreme Court has pointed out:

> A railroad company is not an insurer of the safety of travelers, and it is not required to maintain a foolproof crossing or a crossing where no injury is possible. In general, a railroad company is only liable for a defect or condition [at] . . . a public crossing which is caused by its negligence . . . .

*Price*, 274 N.C. at 39, 161 S.E.2d at 595.

In the case *sub judice*, the evidence, viewed in the light most favorable to plaintiff, reveals the following: the accident occurred on the morning of a rainy day at a rural crossing. There were two parallel train tracks, marked only by a cross-buck warning sign. Foliage growing near the tracks obscured the view somewhat, although a motorist within 75′ of the crossing had essentially an unobstructed view down the tracks. On the average, 23 trains per day passed over these tracks. A moderate number of automobiles (approximately 370 per day) used the rural road although it is unclear whether this number traversed the crossing. The train was burning its headlights, traveling at the maximum speed limit of 70 m.p.h., and, according to plaintiff, failed to sound its horn.

Plaintiff also offered expert opinion testimony that this crossing was extrahazardous and mechanical warning devices were needed.

Assuming *arguendo* that the conditions of the crossing at issue rendered it "extrahazardous," we hold defendant's failure to implement more extensive signalization did not rise to the level of "gross negligence." Plaintiffs argument to the contrary relies heavily upon *Robinson v. Seaboard System R.R.*, 87 N.C. App. 512, 361 S.E.2d 909 (1987), *disc. review denied*, 321 N.C. 474, 364 S.E.2d 924 (1988), wherein this Court held an instruction on *willful and wanton negligence* was supported by the evidence. In *Robinson*, railroad employees, in knowing violation of their company's internal safety procedures, left boxcars parked on a storage track within 30' of a crossing within the Raleigh city limits. Although the train crossing was not a public one, railroad authorities were aware the crossing was in use. They further acknowledged that placement of boxcars in such close proximity to a crossing created a dangerous situation. *Robinson*, 87 N.C. App. at 521-22, 361 S.E.2d at 915.

The case *sub judice* may readily be distinguished from *Robinson*. Plaintiff's accident occurred on a rural road with much greater visibility; defendants did not actively place any obstructions near the tracks; and no evidence indicated knowledge on the part of defendants of any special danger presented by this rail crossing. Furthermore, there is no evidence the train conductor's acts or omissions rose to a heightened level of culpability. Even though plaintiff alleges *gross negligence* (as opposed to *willful and wanton negligence* at issue in *Robinson*), his argument fails. The circumstances depicted are more analogous to a typical rural grade crossing, and are notably similar to other cases wherein only the issue of "ordinary" negligence was submitted. *See Harper*, 211 N.C. 398, 190 S.E. 750; *Finch*, 195 N.C. 190, 141 S.E. 550. Accordingly, even if defendants' gross negligence were held to overcome plaintiff's contributory negligence (and we expressly decline to decide that issue), there is not a sufficient basis in the evidence to support an instruction on gross negligence.

No error.

Judges Eagles and Martin concur.